265 So.2d 685 (1972)
Henry Thomas ASHLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 40861.
Supreme Court of Florida.
May 3, 1972.
Rehearing Denied June 30, 1972.
*687 Lester Bales, Jr., Zephyrhills, for appellant.
Robert L. Shevin, Atty. Gen., Joe Demember, Asst. Atty. Gen., for appellee.
MASON, Circuit Judge.
We have here for review on direct appeal from the Circuit Court of the Sixth Judicial Circuit in and for Pasco County, Florida, appeals from judgments of conviction of murder in the first degree and from death sentences imposed thereon. The two appeals have been consolidated for purpose of briefs and arguments, but since they are from separate trials and raise issues common in some respects to both trials, but divergent in other respects, we will review them separately, though in one opinion.
Five indictments for murder in the first degree were returned against the appellant, defendant below. He moved to consolidate all five cases for purpose of trial and the trial court consolidated four of them for trial, but ordered the fifth to be tried separately. Trial upon the four consolidated indictments was first had, resulting in convictions as charged and without a mercy recommendation in each case. Later trial was had of the fifth indictment, likewise resulting in a conviction of first degree murder without recommendation of mercy. The trial court imposed the death sentence in all five cases.
The victims in the four cases consolidated for the first trial were killed by the appellant around midnight or shortly thereafter on October 3, 1970. They were Andrew Dorn and Mildred Dorn, his wife, owners and operators of Dorn's Hideaway Restaurant, a waitress, Ethel Vaiana, who worked for the Dorns, and her husband, Philip Vaiana, who happened to be in the place at the time of the killings. The restaurant was located in a rather uninhabited area near New Port Richey. Appellant and his companion, hereafter referred to, "cased" the place, to use the vernacular, prior to the occasion of the killings there. The evidence established that the killings were motivated by robbery on the part of appellant. The appellant shot each of the victims in cold blood without any necessity therefor even for the purpose of perpetrating robbery for no resistance of any character was offered by either of the victims. The eye witness to these four homicides was a witness called by the appellant himself. *688 Other witnesses placed the defendant and the eye witness, a companion and friend of the appellant, at the place of the killings at times between 9:30 and midnight. Appellant was driven to and from the site of the killings in an automobile owned by the eye witness. Subsequently, the witness drove the appellant back to St. Petersburg and left him off near his girl friend's house.
The homicide which is the subject of the second trial occurred an hour or two prior to the homicides at Dorn's Hideaway Restaurant. The appellant and his companion had picked up a hitchhiker, one Richard LaPlante, shortly after they had left Dorn's Hideaway Restaurant earlier in the evening, and after riding him around for a short while appellant demanded that the hitchhiker give him his money. The latter did so, thereupon appellant ordered him to get out of the car which was parked at a lonely spot at the time. The hitchhiker started to walk away from the car and as he did appellant shot him several times in the back, killing him. Appellant and his companion dragged the dead man off the road, got back in the car and drove back to Dorn's Hideaway Restaurant, where appellant murdered the four persons for which murders he was tried in the first trial.
Subsequently, on October 6, 1970, the appellant was apprehended at a bus station in Jacksonville, Florida, by FBI agents and by a special agent of the Florida Department of Law Enforcement. While en route to the Duval County Jail appellant was advised that he was charged with a federal offense of unlawful flight to avoid prosecution. During this trip of about five minutes appellant was advised of his constitutional rights under the Miranda ruling by one of the FBI agents. Between 2:00 a.m. and 4:00 a.m. on October 7th, appellant was escorted to a room in the Duval County Jail and interrogated by an assistant state attorney of the Sixth Judicial Circuit for the purpose of ascertaining his participation in the above crimes. Such interrogation was had in the presence of the chief investigator for the State Attorney's Office of the Sixth Judicial Circuit and two special agents of the Florida Department of Law Enforcement. During the course of this interrogation appellant was given Miranda warnings at three separate times. He confessed the killings at Dorn's Hideaway Restaurant and also the killing of the hitchhiker. Following the arrest of appellant in Jacksonville, he was returned to Pasco County and placed in the Pasco County Detention Center. Five days later while there appellant made incriminating statements to a jailer and to a deputy sheriff which involved a disclosure by him of the place where he had thrown the murder weapon following the killings.
Appellant argues five questions raised by his assignments of error. Three of them apply to both trials, the fourth is directed to the first trial and the fifth to the second trial. We will treat them seriatim.
Appellant contends that the trial court erred in refusing to grant his motion for consolidation of all five cases in one trial. He contends that the court's failure to join for trial the indictment for the homicide of the hitchhiker with the trial of the homicides of the other parties at Dorn's Hideaway Restaurant prejudiced him in the preparation of his defense. With this we cannot agree. The trial court in refusing to join the hitchhiker homicide with the other four stated that the hitchhiker case was factually unrelated to the other four cases and that if the facts were found to be related on the question of the defense of insanity raised by the appellant, the failure to consolidate would not prejudice appellant's right to make such a presentation. With this we agree.
It is well recognized that the consolidation for trial of criminal cases rests within the sound discretion of the trial court. Baker v. Rowe, 102 Fla. 622, 136 So. 681; Hall v. State (Fla.) 66 So.2d 863. The consolidation of the Dorn Hideaway Restaurant cases was proper because each of the killings arose one immediately *689 following the other, were at the same place, were of the same nature, grew out of the same transaction and the decision of all of them rested largely on the same evidence. On the other hand, the hitchhiker murder was committed at a different time and was factually unrelated to the other cases. As we have stated it occurred at least an hour earlier than the Dorn Hideaway Restaurant homicides.
The reason given by the state for objecting to the consolidation of the hitchhiker case with the other cases was that if the state used Osteen's (the companion of appellant) testimony in the consolidated cases, he would be immunized from prosecution in the hitchhiker case. It was the view of the state that the prosecution had a stronger case against Osteen in the hitchhiker case than it did in the others. The defense was relying upon a claim of insanity and hoped to establish this defense through cross examination of Osteen if he were called as a witness for the state. Appellant also relied upon his claim of intoxication as it might effect the issue of premeditation and hoped to establish it by the witness Osteen on cross examination. He claims that he was prejudiced, therefore, when the trial court refused to consolidate the hitchhiker case with the other cases. We find that the trial court did not abuse its discretion in refusing to consolidate the hitchhiker case with the other cases. We know of no rule that requires the prosecution to use any particular witness in any given case, and this being true, appellant cannot say that he was prejudiced by the refusal of the trial court to consolidate all of the cases. Even had they all been consolidated, the appellant had no assurance that the state would call Osteen as a witness, for the state had the confession of the appellant as well as other circumstantial evidence to connect the appellant with the hitchhiker case. Furthermore, no prejudicial harm resulted to the appellant for the reason Osteen freely took the stand for the appellant at the first trial, waiving his immunity to subsequent prosecution after full advice from his own attorney. As a result appellant got the full benefit of Osteen's testimony as it bore upon the issue of his mental condition and his state of intoxication.
The second and third points raised by appellant concern the validity of the out-of-court confession made by him in the County Jail in Duval County and the admissions against interest made by him in the Pasco County Detention Center. We consider these points in reverse order to the manner in which they have been raised by appellant in his argument and briefs.
The Duval County statement was made some 5 days prior to the statements made by him in Pasco County. In route to the Duval County Jail a FBI agent advised appellant of his constitutional rights. Subsequently, he was interviewed by four law enforcement agents, after having been again given the Miranda warnings by the Assistant State Attorney. He was then asked if he knew of the homicides in Pasco County. At the outset of the interrogation appellant was advised that he could terminate the questioning at any time he desired. At this point and before the interrogation reached any critical area of self-incrimination, he terminated the questioning, and started back toward his cell. As he walked toward his cell he instigated a conversation with one Etchison, a Special Agent for the Florida Department of Law Enforcement, and in the course of his conversation with the agent stated that he desired to make a statement. He was led back into the interrogation room and again given the Miranda warnings for the fourth time. He indicated his willingness to make a statement and voluntarily confessed to all five homicides with which he was later charged in Pasco County.
We have carefully reviewed the circumstances surrounding the giving of the statement by the appellant at the Duval County Jail and find that the confession was voluntarily and freely made and that the trial court properly admitted it into *690 evidence before the jury. Young v. State, Fla., 140 So.2d 97, Page 99. The voluntariness of the confession was a mixed question of fact and law which was decided first by the trial judge and then by the jury based on the evidence adduced. Furthermore, the procedure used by the interrogation officers meets the standard prescribed by the Supreme Court of the United States in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
The fact that the confession was an oral one does not vitiate its validity nor prohibit it being received into evidence. The true test is whether the statement was voluntarily and advisedly made by the appellant after full warning of his constitutional rights. There is no rule nor statute which requires a statement to be in writing nor that it be recorded by any recording device. The fact that the confession was not written or recorded but was oral would go only to the weight to be given to it, first by the trial judge in determining its voluntariness and second by the jury in determining its evidentiary weight.
We, likewise, find that the contention of appellant with regard to the statement made by him in the Pasco County Detention Center is untenable. A review of the circumstances surrounding the making of this statement indicates that while in the Detention Center appellant voluntarily stated that he knew the whereabouts of the murder weapon. He was not being interrogated at the time, but the statement was first made to the jailer. The jailer immediately told a deputy sheriff. Whereupon the deputy sheriff went to appellant's cell, warned him of his constitutional rights, following which the appellant voluntarily told the deputy sheriff where the murder weapon could be found. The inculpatory statement was made without any coercion or inducement and was made at a time subsequent to appellant's being advised by his counsel, the Public Defender, to keep quiet. We fail to find in any of the circumstances surrounding the giving of this statement anything that would indicate that appellant was compelled to make the statement. The statement that he made to the jailer was a spontaneous noninduced expression on his part, made to a person who was not acting in the capacity of an interrogator, but who just happened to be present in and about the performance of his duties as jailer when the appellant made the statement of his own volition. His subsequent statement made to the deputy sheriff was made only after full warning of his constitutional rights. The statement of the appellant concerning the whereabouts of the gun was properly admitted into evidence and so was the gun itself which was found at the place where appellant told the officers it would be found.
The fourth point raised by the appellant, and which is directed to the first trial only questions the action of the trial judge in adopting the split verdict method of determining the issues of guilt and penalty. At the outset of the trial the Court announced that the split verdict procedure would be used. He stated that the jury would be instructed at the conclusion of the evidence and argument of counsel to retire and deliberate the issue of guilt only and would be directed to render verdicts in each case on the guilt issue only. That in the event verdicts of conviction for first degree murder were rendered, the Court would then direct the jury to retire the second time and consider the issue of penalty; that is to say, whether they would recommend mercy or not, and that they would be instructed in such event to return a second verdict on the issue of penalty. Upon such pronouncement appellant's counsel reserved the right to object to such procedure until such time as of all of the evidence was in. The state announced that it would object to such procedure unless the appellant consented. At the conclusion of the evidence the Court again announced that it was going to direct the jury to render split verdicts, thereupon the appellant objected, with the state consenting.
*691 The Court in its final charge to the jury stated that in the event of a conviction of murder in the first degree the majority of the jury could recommend mercy, and that such recommendation would have the effect of reducing the punishment from death to life imprisonment. However, the Court followed this statement with the further instruction that the jury should disregard this aspect of the case at the moment and should pass only upon the question of guilt or innocence, and that in the event they found the appellant guilty of murder in the first degree they should return verdicts to that effect, and that he would then further instruct them on the question of their duties with respect to penalty.
After due deliberation, the jury returned verdicts in each of the four cases of guilty of murder in the first degree. Upon the pronouncement of the verdicts the trial court announced that each side would be permitted to submit evidence to the jury on the issue of penalty. Thereupon, both the state and the defense stated that they did not desire to offer any further evidence. Each side was then permitted to argue the issue of penalty to the jury. After such argument the Court instructed the jury to retire and deliberate the second time for the purpose of determining the penalty, life or death. The jury retired and after deliberating the second time returned a verdict in each case in the following words "A majority of the jury does not recommend the defendant, Henry Thomas Ashley, to the mercy of the court."
The appellant contends that this procedure denied him due process of law and was prejudicial to him to such extent as to require a new trial in each of the cases included in the first trial. The basis of the appellant's contention is that there is no prescribed procedure in Florida in the trial of criminal cases for the split verdict on the issues of guilt and penalty. It is true that at the time of the trial of the cases sub judice no statute or rule of court specifically authorized the procedure resorted to by the trial court. And in Barlow v. Taylor, Fla., 249 So.2d 437, this Court stated that it is committed, until legislative change, to a one-stage trial at the time that the issue of guilt is before the jury and that due process does not require a bifurcated trial. However, this statement was made in light of the peculiar question that was then before this court and was obiter dictum insofar as the resolution of the issue then before us was concerned. There we were dealing with a situation in which the final judgment of this Court had, in effect, been overruled by a United States district judge who, in a habeas corpus proceeding before him, vacated and set aside a sentence of death for first degree murder which had been imposed in the Circuit Court of Franklin County, and which had, on appeal, been affirmed by us. The federal court set aside the sentence of the trial court on the ground that the defendant therein had been denied a fair trial because there had been an elimination from the panel of prospective jurors one venireman for cause based on his answer that he was opposed to capital punishment. The federal judge left the conviction intact, but ordered the state trial court to either reduce the sentence to life imprisonment, to order a retrial on both guilt and punishment, or provide a retrial on penalty only. The federal court condescended to state that "whatever determination is made in that respect by the state court rests within its judicial prerogative". Thereupon the trial court, upon remand, chose the last alternative and directed that the trial would be reheard on penalty alone. Whereupon, the defendant in that cause petitioned this court for a writ of prohibition, seeking to deny the trial court the exercise of this alternative permitted by the federal court, stating that his purpose was to have this court direct the trial court to reduce the sentence hitherto imposed from death to life imprisonment. It was in the light of these peculiar circumstances that we, in deploring the intrusion of the federal court into the matter and denying the writ of prohibition, made the statement that we are committed in this state to a one-stage *692 trial at the time that the issue of guilt is before the jury. We further stated, however, that to have a second trial in that case on penalty alone, in the exercise of a prerogative granted to the trial judge by the federal judge, would be in truth a bifurcated trial, and that such split trial on penalty would be permitted in view of the forced circumstances in which the trial court found itself. Therefore, our statement in Barlow should not be construed as authority for the position that a split verdict procedure on the issues of guilt and penalty is mandatorily prohibited in this state, nor that the use of the same is denial of due process.
Subsequent to the trial of appellant, legislation was enacted by the Florida Legislature which is now law, Chapter 72-72, that provides for bifurcated trial procedures. However, this does not mean that the procedure used by the trial court herein, which was not specifically authorized by statute or rule of court at that time, automatically entitles a defendant to a new trial. In order for such procedure to be a valid basis for a new trial it is incumbent upon a defendant to establish that its use denied him due process of law.
Our review of the record on this appeal convinces us that the appellant was not prejudiced by the procedure used by the trial court on the issues of guilt and penalty. Instead he was given an opportunity after the jury rendered verdicts of guilty to present evidence in mitigation of penalty and to argue such mitigating circumstances to the jury. When both issues of guilt and penalty are presented to the jury in one trial of the issues the defendant is not accorded an opportunity to present evidence of mitigating circumstances without running the risk of placing himself in a position of self-incrimination. And should he present mitigating evidence he would run the risk of placing his character into evidence which in turn would permit the state to counter with evidence of prior convictions, if any there be. The split verdict procedure in this case not only did not prejudice the appellant, but in fact gave him a second chance to convince the jury that he should not receive the death penalty. Having been accorded the second opportunity to present mitigating circumstances which might have influenced the jury on the issue of penalty under such circumstance as not to prejudice him in the jury's consideration on the issue of guilt, as might have been true had he put his character into evidence in a one-stage trial, appellant cannot now be heard to say that the procedure resorted to by the trial court denied him due process of law. We hold that this assignment of error is not well taken.
The final point raised by appellant concerns itself solely with the second trial. The second trial occurred about a month following the close of the first trial and in it the appellant was tried for the murder of the hitchhiker, LaPlante. It is the position of the appellant that the trial court committed error in permitting the state, over his objection, to introduce evidence in the second trial of the commission of the murders for which the appellant was convicted in the first trial. It is also his contention that the trial court erred in failing to give a cautionary instruction concerning the applicability of such evidence before admitting the same in the second trial.
In the second trial the state called as witnesses the same witnesses as it had in the first trial for the purpose of establishing the identity of the weapon used, some of whom were Pasco County deputy sheriffs, who found the murder weapon at the place that the defendant said it would be found in a statement which he voluntarily gave to such deputies. The state also produced the medical examiner who performed an autopsy on the body of LaPlante, and who testified that he removed certain 22 caliber bullets from LaPlante's body. He was also permitted to testify that at the same time he performed autopsies on the bodies of the victims of the first murder trials and removed from their *693 bodies bullets of the same caliber as those found in LaPlante's body and that all of the bullets were turned over to agents of the Florida Department of Law Enforcement as evidence. These agents also testified that the bullets taken from the bodies of the Dorn's Hideaway Restaurant victims were of identical caliber with the bullets which were removed from LaPlante's body and that all of the bullets were fired from the same gun. Agents of the Florida Department of Law Enforcement testified as to the confession made by appellant when first arrested in the City of Jacksonville in which he stated that he had committed all five murders. The witnesses who testified in the first trial and who placed the appellant and his companion at the scene of the Dorn Hideaway Restaurant killings were permitted to testify in the second trial. Osteen, the companion of the appellant who testified as a defense witness in the first trial, was called by the state and testified to the same facts concerning his being with appellant on the night of all of the killings and who again testified that the same gun was used by the appellant in all of the killings. The state's witness who testified in the first trial that he had sold similar caliber bullets to appellant on the night of the killings testified to the same effect in the second trial.
All of this testimony which connected the appellant to the incidents of the first trial was admitted over the objection of appellant's counsel. Most of the witnesses who testified for the state and who connected the appellant with the four homicides of the first trial testified before a cautionary instruction as to the applicability of such evidence was either requested by the appellant or given by the court. Before the state rested and before two special agents of the Florida Department of Law Enforcement testified as to appellant's confession in Jacksonville and before Osteen testified appellant requested the cautionary instruction and the court gave it.
During voir dire examination of the jury appellant's counsel in interrogating each prospective juror specifically asked such juror if he or she had heard about the first trial and its results and whether the fact that appellant had been convicted in such trial of four separate murders would influence such juror in determining the guilt or innocence in the case then being tried. Thus, the fact of appellant's prior convictions was injected into the trial of the case by his own counsel.
It is well settled in this state that evidence of other crimes is admissible if it casts light on the character of the act under investigation by showing either motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality so that the evidence of such other crimes would have a relevant or material bearing upon some essential aspect of the offense then being tried. Williams v. State (Fla.) 110 So.2d 654. And in Williams we held that relevancy is the test and that if proffered evidence is relevant for any purpose save that of showing bad character or propensity, then it should be admitted. We also held in that case that evidence which has a reasonable tendency to establish the crime laid in the indictment is not inadmissible merely because it points to another crime. Of course, evidence which tends to show that the accused has committed other crimes wholly independent of the crime charge is irrelevant, and, therefore, inadmissible. Suarez v. State, 95 Fla. 42, 115 So. 519.
We are equally committed to the proposition that the state in introducing testimony concerning other crimes committed by a defendant may not make such crimes a feature of the trial instead of an incident, so that the effect is to devolve from development of facts pertinent to the main issue of guilt or innocence into an attack on the character of the defendant. Williams v. State (Fla.) 117 So.2d 473.
Applying the above principles to the facts in the case at bar, we are of *694 the opinion that the evidence objected to was relevant bearing upon the issues of motive, intent and identity and modus operandi of the appellant. A careful review of the evidence does not lead us to believe that evidence of the crimes for which the appellant was convicted in the first trial became a feature of the second trial so as to amount to an attack on the character of the appellant. Furthermore, the appellant himself injected his character into the second trial upon voir dire examination by his repetitious inquiry of prospective jurors as to their knowledge that the appellant had been previously convicted of the four murders which were the subjects of the first trial. So at the very outset of the second trial appellant himself impressed upon the whole panel the fact that he previously had been convicted of four murders. If any prejudice resulted to the appellant as a result of the injection of this issue into the second trial it was brought about by his own action in introducing the subject during the voir dire examination. So long as evidence of other crimes is relevant for any purpose the fact that it is prejudicial does not make it inadmissible. All evidence that points to a defendant's commission of a crime is prejudicial. The true test is relevancy.
Appellant complains that no cautionary instruction was given by the trial judge before receiving the evidence of these other crimes. It was incumbent upon appellant to request such a charge, but he did not do so until most of this evidence had been admitted. When he did request a cautionary charge, the court gave it. We do not find a situation here which would warrant the conclusion that fundamental error was committed because the trial court did not, of its own motion, give the cautionary instruction before the reception of the evidence in question. Had he been requested to give the instruction and refused to do so, the appellant might have cause for complaint. A party may not complain on appeal about a failure to give an instruction unless an objection has been made to such failure. Williams v. State (Fla.) 247 So.2d 425; Fla. Stat., Section 918.10(4), F.S.A.
The evidence in this case to sustain conviction is overwhelming. Not only did the state produce the voluntary confessions and admissions of the appellant by which he confessed this particular crime, but also his companion, the witness Osteen, testified in detail as to the fact that the appellant killed LaPlante, reciting the cold blood and cruel manner in which the homicide was committed. This witness testified against appellant after having waived his constitutional right against self-incrimination. The trial court was very careful to inform the witness that anything he testified to which constituted self-incrimination could be used against him in the event he was prosecuted for any participation of his in the commission of the crime. He testified fully in the face of such warning.
We have read the entire record and evidence in accord with the mandate of Rule 6.16, subd. b, Florida Appellate Rules, 32 F.S.A., and conclude that all such evidence points unerringly to appellant's guilt and that the convictions of the appellant in all of these cases, subject of this appeal, are justified, supported by the evidence and free from error.
The convictions of the appellant in all five cases are, therefore, affirmed.
It is so ordered.
ROBERTS, C.J., and ERVIN, CARLTON, ADKINS, BOYD and McCAIN, JJ., concur.