319 So.2d 150 (1975)
Alfred Lee ROSHER, Appellant,
v.
STATE of Florida, Appellee.
Nos. 74-1195, 74-1196.
District Court of Appeal of Florida, Second District.
September 10, 1975.
Rehearing Denied October 6, 1975.
Joseph F. McDermott, of McDermott & Ohle, St. Petersburg, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
GRIMES, Judge.
Appellant was found guilty of second degree murder by a jury. On appeal, he claims that certain statements made by him should not have been admitted into evidence.
At trial the testimony of Detective Crawford was proffered out of the presence of the jury. Crawford stated that while appellant was at the booking desk *151 subsequent to his arrest, Arthur Copeland, a co-defendant, was brought from his cell to the booking area. Crawford stated that Copeland pointed to appellant and said, "That's the man that killed the old man," and that appellant replied, "Arthur, why did you say that? Why did you tell them that?" Crawford testified that he was aware that Copeland knew appellant personally, but stated that the only purpose for the confrontation was to have Copeland positively identify appellant:
"It was for identification purposes only. I mean, to make sure that I had the right Al Rosher involved."
Prior to the confrontation, appellant had been advised of his constitutional rights, had expressed a desire to remain silent, and had requested that an attorney be appointed for him. Thereafter, questioning of appellant had ceased.
Appellant's motion to suppress his statements was denied by the trial court, stating:
"However I believe that the defendant Rosher had been adequately and properly advised of his constitutional rights prior to this event occurring and that this was a spontaneous statement made on his part to his co-defendant that perhaps should not have been made."
Upon the return of the jury, Detective Crawford repeated his testimony before it.
Appellant contends that his statements were taken in violation of his rights under the Fifth and Sixth Amendments to the United States Constitution. He claims that his statements were the result of "custodial interrogation" after the exercise of his right to remain silent in violation of the dictates of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Further, appellant claims that his statements were made under circumstances similar to those in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).
Escobedo, supra, is not on point. There, petitioner testified that during the course of the investigation he repeatedly asked to speak to his lawyer and that the police informed him that his lawyer "didn't want to see" him. The testimony of the police officers involved confirmed this fact. In reality, petitioner's counsel was present and had repeatedly expressed a desire to see his client. A police officer testified that during the interrogation of petitioner, the following occurred:
"I informed him of what DiGerlando told me and when I did, he told me that DiGerlando was [lying] and I said, `Would you care to tell DiGerlando that?' and he said, `Yes, I will.' So, I brought * * * Escobedo in and he confronted DiGerlando and he told him that he was lying and said, `I didn't shoot Manuel, you did it.'"
Thereafter, petitioner made additional statements further implicating himself in the murder plot. At no time prior to making any of these statements was petitioner advised of his constitutional right to remain silent.
While the statements complained of in Escobedo and in the case sub judice arose out of a confrontation between codefendants, Escobedo turns upon the denial of petitioner's request to see his counsel and does not control here.
The holding in Escobedo v. Illinois, supra, was:
"We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an *152 opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied `the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution ... and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." (Emphasis added.)
At no time was appellant herein denied access to counsel. The trial court found that he had been adequately and properly advised of his constitutional rights and that his statement was "spontaneous." Spontaneous statements are admissible in evidence even though an accused is in custody when he makes them. Spontaneous statements are those which are not the product of interrogation. See Ashley v. State, Fla. 1972, 265 So.2d 685, and Sikes v. State, Fla.App.2d, 1975, 313 So.2d 436.
We are constrained to point out that it would have been better practice to accomplish the identification in a manner whereby appellant was not aware that Copeland was observing him. Should it ever appear that a confrontation between co-defendants has been staged for the purpose of eliciting a response from one of them, we will not hesitate to hold such a ploy the equivalent of impermissible "custodial interrogation" as proscribed by Miranda. Horton v. State, Fla.App.2d, 1973, 285 So.2d 418. Here, however, there is ample support in the record for the trial court's conclusion that appellant's statements were spontaneous and not the product of interrogation.
We have reviewed the other points on appeal and find them to be without merit.
Affirmed.
BOARDMAN, A.C.J., and SCHEB, J., concur.