397 So.2d 277 (1981)
Mack C. RUFFIN, Jr., Appellant,
v.
STATE of Florida, Appellee.
Nos. 55684, 56741.
Supreme Court of Florida.
March 26, 1981.
Rehearing Denied May 15, 1981.
*278 Jack O. Johnson, Public Defender and Douglas A. Lockwood, Asst. Public Defender, Bartow and W.C. McLain, Spec. Asst. Public Defender, Fort Myers, for appellant.
Jim Smith, Atty. Gen. and William I. Munsey, Jr. and Charles Corces, Jr., Asst. Attys. Gen., Tampa, for appellee.
PER CURIAM.
Mack C. Ruffin, Jr. appeals his convictions of murder in the first degree and sexual battery of Karol Hurst and his sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution. Having reviewed the record and considered the issues raised by Ruffin, we find no reversible error.
Intending to steal an automobile to use in a convenience store robbery, on February 21, 1978, Ruffin and his companion, Freddie Lee Hall, drove to a Pantry Pride grocery store parking lot. There they stole an automobile and at gunpoint abducted its owner, Karol Hurst, who was twenty-one years old and seven months pregnant. They drove their victim to a heavily wooded area where they sexually abused her. Although she pleaded for her life and offered Ruffin and Hall a check for $20,000, she was pistol whipped on her head, neck, shoulder, and body, was robbed of her pocketbook, wallet, and checkbook, and was shot to death with a.38 caliber pistol in the back of her head while lying face down on the ground.
After the murder of Mrs. Hurst, Ruffin and Hall drove the stolen car to the convenience store which they intended to rob. Pretending to be customers, they purchased a teddy bear and two bundles of socks. Suspicious of these two men, the store manager asked a customer to call the sheriff's department. Without attempting the planned robbery, Ruffin and Hall left the store. Outside Deputy Coburn, holding his shotgun, was standing by his patrol car. A customer in the store observed Mrs. Hurst's car parked near the store. The store manager telephoned the sheriff's substation *279 across the street as soon as the two left the store. She then heard what she thought to be a gunshot. Immediately thereafter, Deputy Coburn was found shot lying on the ground. Beside him were the .38 caliber pistol that had killed Mrs. Hurst, the teddy bear, and the socks. The deputy who arrived at the scene and found Coburn's body saw Mrs. Hurst's car speeding away from the scene. Another deputy was dispatched to pursue this automobile. A high speed chase ensued, and the passenger in the car being pursued fired three shots at the deputy. This automobile was then abandoned, and the two were pursued on foot and were finally apprehended. In the automobile were found a .357 magnum pistol belonging to Deputy Coburn, Mrs. Hurst's handbag, groceries which she had purchased just prior to her abduction, and Ruffin's fingerprint.
Mrs. Hurst's body was found with a bullet hole through the back of her head, a deep abrasion below the right chin, two deep abrasions and a large bruise in the shoulder area, an abrasion and contusion over the right shoulder, four abrasions and two large contusions on the back of the neck, and a contusion to the right nipple which the pathologist testified would have been quite painful. The cause of death was the bullet that entered the back of the victim's head and traversed her brain. The pathologist stated, however, that the death would not necessarily have been instantaneous.
Ruffin confessed that he and Hall had stolen the car to use in a convenience store robbery, had abducted Mrs. Hurst, had raped her, and that Hall had shot her to death.
Ruffin was indicted for first-degree murder, sexual battery, kidnapping, grand larceny, and robbery. The latter three charges were nolle prossed, and he was tried and convicted of murder in the first degree and sexual battery of Mrs. Hurst. Prior to his sentencing, he had also been convicted and sentenced to life imprisonment for the killing of Deputy Coburn. This conviction was affirmed by the District Court of Appeal, Fifth District, Ruffin v. State, 390 So.2d 841 (Fla. 5th DCA 1980).
He argues first that his conviction should be reversed because the trial court erred in refusing to grant a mistrial after certain allegedly prejudicial remarks were made by the prosecutor in closing argument and because the court did not poll the jury as to whether they had seen a particular headline of a newspaper located in a newsstand near where the jurors were lunching. These contentions are completely without merit and warrant no further discussion.
Ruffin also challenges his conviction on the basis that the trial court erred in admitting into evidence testimony of other offenses committed by him contrary to the "Williams rule." Williams v. State, 110 So.2d 654 (Fla. 1959), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). He concedes that this challenged evidence tended to prove identity in that it linked him to the victim's automobile, explained where the murder weapon was located, and how he was apprehended; however, relying upon Smith v. State, 344 So.2d 915 (Fla. 1st DCA 1977), cert. denied, 353 So.2d 679 (1977), he argues that this evidence should not have been admitted because it was not necessary to the prosecution of this case and that the prosecutor was overzealous in utilizing it. He contends that under the "Williams rule" such evidence, to be admissible, must be not only relevant but also necessary to the prosecution.
The State counters that this evidence which was clearly relevant to proving the identity of Ruffin was properly admitted into evidence. It contends that the test for the admissibility of such evidence is relevancy, not necessity. We agree with the State's contention, and, to the extent that the language of the district court's opinion in Smith v. State is inconsistent with our holding, it is disapproved.
In Williams v. State, we announced a broad rule of admissibility based upon relevancy. Necessity has never been established by this Court as an essential requisite to admissibility. In Williams, we declared *280 that any fact relevant to prove a fact in issue is admissible into evidence even though it points to a separate crime unless its admissibility is precluded by a specific rule of exclusion. We further held that evidence of collateral offenses is inadmissible if its sole relevancy is to establish bad character or propensity of the accused. We emphasized that the question of relevancy of this type of evidence should be cautiously scrutinized before it is determined to be admissible, but that nonetheless relevancy is the test. Evidence of other crimes is relevant if it casts light on the character of the crime for which the accused is being prosecuted. For example, this evidence is relevant when it shows either motive, intent, absence of mistake, common scheme or plan, identity, or a system or general pattern of criminality. Subsequently, in Williams v. State, 117 So.2d 473 (Fla. 1960), we reaffirmed the rule of admissibility enunciated in our first Williams case but reversed a defendant's conviction because the State had made a collateral offense a feature instead of an incident of the trial. We held that the State had gone too far in the introduction of testimony about a later crime committed by the accused so that the inquiry transcended the bounds of relevancy to the charge being tried, and we stated:
This may not be done for the very good reason that in a criminal prosecution such procedure devolves from development of facts pertinent to the main issue of guilt or innocence into an assault on the character of the defendant whose character is insulated from attack unless he introduces the subject.
117 So.2d at 475-76. Thereafter, in Wilson v. State, 330 So.2d 457 (Fla. 1976), we held that the introduction of six hundred pages of trial transcript pointing to separate crimes committed by the defendant was not reversible error because this evidence was relevant to establish a pattern of conduct similar to the conduct for which defendant was being prosecuted.
In Ashley v. State, 265 So.2d 685 (Fla. 1972), defendant sought reversal of a murder conviction because the trial court admitted evidence of four other murders that he had committed shortly after the murder for which he was tried. We held that the evidence objected to was admissible because it was relevant to the issues of motive, intent, identity, and modus operandi of defendant. We reached this conclusion even though this evidence may not have been necessary to the State's case since Ashley's confession was in evidence as was the testimony of an eyewitness to the murder. We emphasized: "So long as evidence of other crimes is relevant for any purpose the fact that it is prejudicial does not make it inadmissible. All evidence that points to a defendant's commission of a crime is prejudicial. The true test is relevancy." 265 So.2d at 694. See also Antone v. State, 382 So.2d 1205 (Fla. 1980); Brown v. State, 381 So.2d 690 (Fla. 1980); Alford v. State, 307 So.2d 433 (Fla. 1975).
In our recent decision of Smith v. State, 365 So.2d 704 (Fla. 1978), relying upon Ashley v. State, we recited that among the other purposes for which a collateral crime may be admitted under Williams is establishment of the entire context out of which the criminal action occurred. We said:
At trial the state's theory was that, as Johnson testified, the two murders occurred during one prolonged criminal episode. The three perpetrators met together and planned a robbery. The rest of the night was devoted to the robbery, its concealment, and the allocation of the proceeds. From the time the parties met and conspired to commit robbery, there was an unbroken chain of circumstances relating to and flowing from the robbery. Because of the robbery two related murders occurred within a short time of one another. Of the three men who committed the first murder, one was the victim of the second murder and the other two were his killers. Smith's car was used throughout the criminal episode and the same ice pick was used in the robbery and both murders. The second murder is clearly a part of the context surrounding the murder for which Smith was tried. Evidence of the murder of Wagner is therefore relevant to illustrate the criminal *281 context in which the first murder occurred.
Additionally, the testimony concerning the second homicide is relevant to place Smith at the scene of the first, since it shows that he was with the people involved in the initial homicide just an hour after it took place. He was also placed by this evidence in a car which was directly linked to the scene of the first murder.
365 So.2d at 707.
The testimony of collateral crimes to which Ruffin objects was properly admitted into evidence because it was relevant to the material issue of identity and because it established the entire context out of which the criminal action occurred. Furthermore, we find that contrary to Ruffin's assertion, this testimony did not become a feature as opposed to an incident of his trial on the present charges.
In addition to reviewing the record in light of the alleged errors asserted by Ruffin which are without merit, we have reviewed the evidence pursuant to Florida Rule of Appellate Procedure 9.140(f), and we conclude that no new trial is required. We, accordingly, affirm the convictions for murder in the first degree and sexual battery.
We next consider Ruffin's challenges to his death sentence. After a jury recommendation of death, the trial court imposed the sentence of death. It found that the following aggravating circumstances had been proven beyond a reasonable doubt:
(a) That at the time of the crime for which he is to be sentenced, the Defendant had been previously convicted of another capital offense or of a felony involving the use or threat of violence to some person.
(b) That the crime for which the Defendant is to be sentenced was committed while the Defendant was engaged in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, any robbery, arson, burglary, kidnapping, aircraft piracy, or the unlawful throwing, placing or discharging of a destructive device or bomb.
(c) That the crime for which the Defendant is to be sentenced was especially heinous, atrocious or cruel....
The court gave the following reasons in justification for finding these three aggravating circumstances:
A. That at the time the crime for which Defendant Ruffin is to be sentenced he had previously been convicted of one felony involving the threat of violence to persons, as is shown and reflected by the copy of the 1978 adjudication of guilt of Defendant Ruffin of First Degree Murder, copy of the adjudication having been introduced into evidence by the State during the sentencing proceeding.
B. That the crime for which Defendant Ruffin is to be sentenced was committed while in the act of committing a robbery, and kidnapping, namely the robbery and kidnapping of Karol Lea Hurst on the 21st day of February, 1978, at approximately 3:00 P.M. as is shown and reflected by the testimony presented during the trial and sentencing proceeding.
C. The crime for which the Defendant Ruffin is to be sentenced is especially heinous and atrocious. A summary of the testimony in regard to Paragraph B and C above is as follows:
AS TO ROBBERY
1. That Karol Lea Hurst while returning to her parked automobile after buying groceries at the Pantry Pride Grocery Store, located at the J.M. Fields Plaza in Leesburg, Florida, was robbed by the Defendant Ruffin of certain items; her pocketbook, wallet, checkbook, and a 1975 Plymouth Fury belonging to her and her husband, Benjamin Hurst.
AS TO KIDNAPPING
2. At the same time and place Karol Lea Hurst was forcibly and against her will kidnapped and abducted by the Defendant Ruffin from said J.M. Fields Plaza Parking Lot and driven by Hall the *282 co-defendant, in said Plymouth Fury to a heavily wooded area in Sumter County, Florida, where she was pistol whipped on and about her head, neck, shoulders and body and was sexually abused by either or both Defendants, Mack Ruffin, Jr. and his co-defendant Freddie Lee Hall.
AS TO HEINOUS AND ATROCIOUS ACTS
The victim Hurst was, at that time, 21 years of age, 7 months pregnant, and married less than one year. She begged and pleaded with either or both Defendant Ruffin and his co-defendant Hall to spare her life and that of her unborn child. Evidence in the form of her check in the sum of $20,000.00 was found at the crime scene to support her unheeded plea. She was shot in the back of the head while lying face down with a .38 caliber pistol. The said.38 caliber pistol was found four hours later under the dead body of Deputy Lonnie C. Coburn, shot to death in Hernando County, Florida.
Ruffin argues that the trial court erred in finding as an aggravating circumstance that the murder occurred during the course of a kidnapping and robbery, first, because he was not on notice that these offenses would be considered and, second, because he was not tried for these particular offenses by the jury. Ruffin's first contention is without merit. A defendant has no right to a statement of particulars as to the aggravating circumstances upon which the State will rely to support its request for the death penalty. Clark v. State, 379 So.2d 97 (Fla. 1979). His second contention is also without merit. It was not necessary that Ruffin be charged and convicted of the robbery and the kidnapping that led to the murder of Mrs. Hurst. The State proved beyond a reasonable doubt that concomitant with the murder Ruffin also committed the robbery and the kidnapping. The State has clearly met its burden, and the court properly found and applied this aggravating circumstance.
We likewise reject Ruffin's assertion that the trial court erroneously considered his conviction for murder of Deputy Coburn as the aggravating circumstance, "previously convicted of another capital offense," since this conviction was on appeal to the District Court of Appeal, Second District, at the time of sentencing. We recently held that this aggravating circumstance encompasses convictions in existence at the time of sentence for crimes committed after the murder for which a defendant is being sentenced. King v. State, 390 So.2d 315 (Fla. 1980). Ruffin submits, however, that if the prior conviction of a felony involving the use or threat of violence is to be used as an aggravating circumstance, it must be final and that in the present case it was not final at the time of sentencing in view of his pending appeal of that conviction. Citing Joyner v. State, 158 Fla. 806, 30 So.2d 304 (1947), he suggests that we analogize this situation to the enhancement of sentences under the habitual offender act. Section 775.084, Florida Statutes (1977). We reject this analogy. Ruffin, at the time of sentencing, had been adjudged guilty of Coburn's murder, and the fact that this conviction was on appeal did not affect its consideration for the purpose of determining Ruffin's character and propensity to commit violent crimes. In Joyner v. State, we held that before a prior conviction may be used to enhance punishment under the habitual offender statute, the prior conviction must be final and, if an appeal is taken from a judgment of guilty, the conviction is not final until the judgment of the lower court is affirmed on appeal. But we explained that the purpose of the habitual offender statute "is to protect society from habitual criminals who persist in the commission of crime after having been theretofore convicted and punished for crimes previously committed." 30 So.2d at 306.
On the other hand, the purpose of considering previous violent convictions in capital cases differs from the purpose of the habitual offender statute. In Elledge v. State, 346 So.2d 998, 1001 (Fla. 1977), we said "the purpose for considering aggravating and mitigating circumstances is to engage in a character analysis of the defendant *283 to ascertain whether the ultimate penalty is called for in his or her particular case. Propensity to commit violent crimes surely must be a valid consideration for the jury and the judge."
Certainly, the fact that a defendant has been found guilty by a jury and adjudicated guilty by the trial court of such violent crimes is material to this character analysis. A defendant previously convicted of a violent felony against the person of another should not be able to escape this character analysis by an argument that his conviction, which is presumed to be correct, is on appeal. Ruffin's previous conviction for the murder of Deputy Coburn was properly considered by the trial court because it was relevant to a determination of Ruffin's propensity to commit violent crimes. Peek v. State, 395 So.2d 492, (Fla. 1980).
Ruffin further contends that the trial court reversibly erred in failing to consider and to weigh the mitigating circumstance of no significant history of prior criminal activity. The State, during closing argument in the sentencing phase of the trial, urged the jury and judge to consider Ruffin's murder of Deputy Coburn as significant prior criminal activity. Ruffin now contends that it was improper to consider this criminal conduct because it occurred during the same criminal episode and after the murder for which he was being tried. The State responds that this criminal activity was properly considered to negate the mitigating circumstance of no significant history of prior criminal activity.
We hold that in determining the existence or absence of the mitigating circumstance of no significant prior criminal activity, "prior" means prior to the sentencing of the defendant and does not mean prior to the commission of the murder for which he is being sentenced. The interpretation of "prior" advanced by Ruffin is unreasonable particularly in view of the fact that a defendant may have committed a murder for which he is not apprehended until many years later and during the course of these years he may have a long history of significant criminal activity. Ruffin's position would prevent the court from negating this mitigating circumstance by considering the defendant's criminal activity occurring after the commission of the murder. This interpretation would thwart the legislature's intent when it established this mitigating circumstance.
We also find no merit in Ruffin's assertion that the court erred in not considering and weighing as a mitigating factor that his participation in the murder was minor and that he was under the domination of Hall. Apparently, neither the jury which recommended the death penalty nor the trial court believed that Ruffin's participation was minor or that he was under Hall's domination. His contention is premised solely on a self-serving portion of his confession, and the record does not evidence this alleged domination or only minor participation in the criminal activities culminating in the death of Mrs. Hurst.
Furthermore, the trial court did not err in not finding Ruffin's dull normal intelligence to be a mitigating factor. Although recognizing that his intelligence level does not fit into the statutory mitigating circumstances relating to mental conditions, Ruffin urges that the court should have considered it to be a non-statutory mitigating circumstance. The mere fact that evidence that Ruffin was of dull normal intelligence was presented does not mean, as Ruffin seems to suggest, that the trial court was compelled to find this to be a mitigating factor.
We also reject Ruffin's contentions that his sentence of death amounts to cruel and unusual punishment and that the trial court erroneously limited the jury to consideration of statutorily enumerated mitigating circumstances contrary to the requisites of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Review of the record of the instructions in the sentencing phase of the trial reveals that the court limited the jury only to its consideration of statutorily enumerated aggravating circumstances but did not limit the jury to consideration of only statutorily delineated mitigating circumstances.
*284 Accordingly, finding no reversible error, we affirm the judgments and sentences.
It is so ordered.
ADKINS, BOYD, OVERTON and ALDERMAN, JJ., concur.
SUNDBERG, C.J., concurs as to conviction, and dissents as to sentence with an opinion, with which ENGLAND and McDONALD, JJ., concur.
SUNDBERG, Chief Judge, dissenting.
Although I concur with the affirmance of the conviction, I have grave problems with the death sentence affirmed by the majority.
First, the majority holds that "in determining the existence or absence of the mitigating circumstances of no significant prior criminal activity, `prior' means prior to the sentencing of the defendant and does not mean prior to the commission of the murder for which he is being sentenced."[1] I am troubled by the use of a contemporaneous crime in the same criminal episode to negate the mitigating circumstance of no history of prior criminal activity. The unfairness of such a holding is painfully obvious in the present case where the conviction for the murder of the deputy, which actually occurred shortly after the kidnapping, robbery and death of the woman, is utilized to create a "history" of prior criminal activity when the defendant had no other criminal history. Such a holding goes against any common-sense interpretation of the phrase "history of prior criminal activity" and amounts to tortured logic in my estimation. The trial judges of our state have not interpreted this section in such a manner.[2]
I can understand the majority's point with respect to a criminal history intervening between a stale homicide and prosecution for that homicide. However, that is not the case before us.
I recognize that Elledge v. State, 346 So.2d 998 (Fla. 1977), and Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977), permit subsequent or contemporaneous criminal acts for which there is a conviction prior to the sentence for a homicide to be used in aggravation. This does not mean, however, that we should allow a contemporaneous crime to be used to negate the mitigating circumstance of no history of prior criminal activity as was done in this case. The statutory language for the aggravating circumstance speaks only in terms of "previous convictions."[3] The language related to the mitigating circumstance speaks in terms of no significant "history of prior criminal activity."[4] The term "history" must relate to a time frame broader than crimes committed contemporaneously with the crime for which the death sentence is being imposed. To hold otherwise would result in a finding of a "history" of prior criminal activity for every person who commits another crime during the same criminal episode in which a murder is committed.
A second problem which concerns me is the fact that the jury was permitted to consider robbery and kidnapping in aggravation, even though the defendant was neither charged with[5] nor convicted of those crimes. Although the trial judge is experienced enough to know the elements which make up the crime of robbery and kidnapping, *285 I do not believe we can attribute that same expertise to a jury. The prosecution urged this aggravating circumstance[6] on the jury as well as the court and it occurs to me that the jury may very well have found that the homicide occurred during the commission of a robbery and a kidnapping without ever having been instructed as to the elements of those crimes.
Since I conclude there was error in permitting the jury to consider an aggravating factor upon which they had not been properly instructed coupled with the existence of one found mitigating circumstance  age  as well as another that was supported by the evidence (no significant history of prior criminal activity), resentencing is called for. Elledge v. State. Furthermore, since the taint in the process may have affected the jury's recommendation I would remand for a full sentencing hearing before jury and judge.
ENGLAND and McDONALD, JJ., concur.
NOTES
[1] Majority opinion at page 283.
[2] Trial courts have traditionally interpreted "history of prior criminal activity" as crimes committed previously to the one for which the defendant is being sentenced. See, e.g., Hargrave v. State, 366 So.2d 1 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979); Songer v. State, 365 So.2d 696 (Fla. 1978), cert. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979); Salvatore v. State, 366 So.2d 745 (Fla. 1978).
[3] Section 921.141(5)(b), Florida Statutes (1979), states: "The defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person."
[4] Section 921.141(6)(a), Florida Statutes (1979), states: "The defendant has no significant history of prior criminal activity."
[5] Although originally indicted for these crimes they were nolle prossed before trial.
[6] Section 921.141(5)(d), Florida Statutes (1979), states: "The capital felony was committed while the defendant was engaged, or was an accomplice, in the commission of, or an attempt to commit, or flight after committing or attempting to commit, any robbery, rape, arson, burglary, kidnapping, or aircraft piracy or the unlawful throwing, placing, or discharging of a destructive device or bomb."