SHARP, W., J.
concurring specially.
I agree this case should be affirmed. But, I also think it is important to state the reasons for affirming.
Cardona was convicted of false imprisonment without a weapon, improper exhibition of a deadly weapon, and exposure of his sexual organs,[1] after he attacked Zvosec (the victim in this case), on the Rollins College campus. On appeal, Car-dona argues that the testimony of two state witnesses, Calandra and Raymond, were erroneously admitted as Williams Rule evidence.[2] In my view, the facts established at trial and the law support the trial court’s evidentiary rulings, and reflect the supreme court’s interpretation of evidence admitted under section 90.404(2)(a). Robertson v. State, 780 So.2d 106 (Fla. 3d DCA 2001), rev. granted, 799 So.2d 219 (Fla.2001); Heath v. State, 648 So.2d 660 (Fla.1994)(trial court has broad discretion in determining relevance of evidence; such determination will not be disturbed, absent abuse of discretion).
The record discloses that between 5:00 and 5:30 p.m., on April 12, 2001, Zvosec, a Rollins College co-ed, was walking on the sidewalk on the Rollins campus, from the general store to her dorm room. It was the middle of the second semester. She was walking near an area where students and faculty park.
A dark green car, possibly a Honda, slowed down and stopped. When pressed as to the vehicle’s age, she first said she thought it was relatively new, but later *298 said she didn’t know. She thought the car had four doors. A man in his twenties, Latin (or not Caucasian) with dark hair, was driving the car. His window was all the way down. He asked her directions to the campus center. She thought the question odd but answered it, pointing in the direction of the campus center, while moving closer to the car.
She guessed she was a few inches from him when she observed him with his pants down, or not wearing them, masturbating. He asked her if she liked watching people jerk off. Suddenly, he grabbed her arm, and she fell in towards the vehicle. At one point, he forced her hand onto his penis and tried to get her to masturbate him. She saw a knife on the seat next to him and felt it on her arm at one point. She said she remembered what her parents had told her about never getting into a car with a stranger, and pulled away. She began screaming in the middle of the street, attempting to summon her friends. The man drove around a roundabout. She wondered why he didn’t immediately leave. Then he sped up and she had to jump out of the way to avoid being hit.
Subsequently, a detective assigned to surveillance on the Rollins campus, Detective Rosner (Rosner), was informed by dispatch that a car matching the description given by Zvosec had stopped at a daycare center near the campus. Rosner approached the car, which Cardona was driving. After reading Cardona his rights, Cardona’s eyes started to tear and he told Rosner “I fucked up. I went to the lake, and I smoked a little weed, and I felt a little horny so I jerked off.” Subsequently (and later at trial), Zvosec identified Car-dona as her assailant.
I. Williams Rule Evidence.
At Cardona’ s trial, Calandra, also a Rollins College co-ed, testified that five months before the crime in this case took place, at midterms, and right before Thanksgiving in 2000, she was walking on the sidewalk on the Rollins College campus. It was between five and six p.m. A man in a dark green car stopped to ask her directions. He was Latin, with dark skin and dark hair. The car was a two-door model, with tinted windows; probably an older model. When asked, she defined “older” as five years. The driver’s window was all the way down.
The man first asked Calandra directions to the gym. She thought the question odd because any student would know its whereabouts. But she answered it was “right there,” indicating behind her and in the direction his car was facing. He asked her the location of the campus center. She responded it was a little farther down the street. Unlike Zvosec, Calandra did not approach the car. She guessed she was a few feet away. The man then told her he had one more question for her. At that point, she did walk off the sidewalk over towards his car but she never got as close to him as did Zvosec. The man then asked Calandra if she had ever had oral sex with a stranger.
Calandra testified she became afraid, said “no,” and headed for her car which was parked nearby. He followed her saying obscene things, like he had heard it was very exciting. He continued to yell obscenities at her and pulled his car into the gym entranceway to block her in. He pulled his car into the space next to hers and said “Look how big my cock is,” opening his car door. Calandra glanced up and saw that his pants were off, he was naked from the waist down. He had his hand on his penis; she couldn’t tell if he was erect. Fortunately for Calandra, another car was coming and the man exposing himself drove away. Calandra identified the man as Cardona.
*299 Section 90.404(2)(a) is a codification of the rule announced in Williams v. State, 110 So.2d 654 (Fla.1959) regarding admission of evidence of other crimes or bad acts. See Kulling v. State, 827 So.2d 311 (Fla. 2d DCA 2002). The rule states:
(2) OTHER CRIMES, WRONGS, OR ACTS—
(a) Similar fact evidence of other crimes, wrongs or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
This type of evidence is variously referred to as “Williams rule evidence,” “similar fact evidence,” or “collateral crimes evidence.”
The supreme court has written a number of opinions elaborating its position in Williams and the application of section 90.404(2)(a). Simply stated, the true test for admissibility of similar fact evidence is relevancy: any evidence relevant to prove a material fact at issue is admissible, unless precluded by a specific rule of exclusion. See, e.g., Zack v. State, 753 So.2d 9, 16 (Fla.2000); Chandler v. State, 702 So.2d 186 (Fla.1997); State v. Savino, 567 So.2d 892 (Fla.1990); Drake v. State, 400 So.2d 1217, 1218 (Fla.1981); Williams; State v. Mosley, 760 So.2d 1129 (Fla. 5th DCA 2000). The evidence does not have to be necessary to the state’s case; merely relevant. Ruffin v. State, 397 So.2d 277, 279 (Fla.1981), receded from other grounds, Scull v. State, 533 So.2d 1137 (Fla.1988). So long as it is relevant for any purpose of fact, the fact that it is prejudicial does not make it inadmissible. Ashley v. State, 265 So.2d 685, 694 (Fla.1972).
Similar fact evidence is merely a special application of the general rule that all relevant evidence is admissible unless specifically excluded by a rule of evidence. Bryan v. State, 533 So.2d 744, 746 (Fla.1988). Relevant evidence will not be excluded merely because it relates to facts that point to the commission of a separate crime. Williams v. State, 621 So.2d 413 (Fla.1993). In fact, all evidence that points to a defendant’s commission of a crime is prejudicial; the true test is relevancy. Bryan; Ashley. The only limitation to the relevancy rule is that the state should not be permitted to make the evidence of other crimes the feature of the trial, or to introduce the evidence solely for the purpose of showing bad character or propensity. Bryan at 746.
In Chandler, the supreme court again announced principles which govern how this rule should be applied, reiterating its position in Williams that “relevant evidence will not be excluded merely because it relates to similar facts which point to the commission of a separate crime.” Chandler at 191. Further, the court noted, Williams holds that evidence of similar facts is admissible for any purpose if relevant to any material issue, other than propensity or bad character, even though the evidence points to the commission of another crime. Id. Similar fact evidence is also admissible when the evidence establishes the circumstances leading to the defendant’s arrest. Geske v. State, 770 So.2d 252 (Fla. 5th DCA 2000).
The Chandler court stated that a common thread in admissibility of similar fact evidence is that there be startling similarities in the facts of each crime and that they are unique. But the supreme court has never required that the collateral crime be absolutely identical to the raime charged. Chandler. As the Chandler court noted, citing its opinion in Gore v.
*300 State, 599 So.2d 978 (Fla.1992), the few dissimilarities between the two incidents in that case, and in particular the biggest difference,[3] seemed to be a result of differences in the opportunities with which the defendant was presented. Chandler at 193. The Chandler court recognized that although the crimes were not exactly the same, that fact alone did not preclude admission of collateral crime evidence and, indeed, if exact identity were the standard, it would erect an almost impossible standard of admissibility. Chandler at 194.
There are two problems a trial judge must resolve before admitting similar fact evidence. First, the trial judge must determine what relevant issue the evidence is being offered to prove, aside from bad character or propensity. Second, the trial judge must determine whether the combination of facts in the two incidents is sufficiently unique to amount to fingerprint type[4], behavior, i.e., it is improbable that any other person would have committed the crime in the same manner. See Crowell v. State, 528 So.2d 535, 536 (Fla. 5th DCA 1988), and cases cited therein.
The similarities go to “unusual characteristics”; a unique scheme or pattern. In this vein, the term “fingerprint” is more akin to “signature.” See United States v. Benedetto, 571 F.2d 1246, 1249 (2d Cir. 1978) (citing McCormick, Evidence § 190 at 449 (2d ed.1972)), where it was explained that:
The more unique and unusual are the common characteristics of the similar acts involved, the more probative become the prior acts, since they then are sufficiently distinctive to be viewed as “fingerprints” or “signatures” of the person charged. (Emphasis added)
Benedetto, 571 F.2d at 1249. Thus, to be admissible under section 90.404, there must be identifiable points of similarity which pervade the compared factual situations; the similarity must have a special character that points to the defendant; and it must be unique so as to constitute fingerprint type evidence. Kulling v. State, 827 So.2d 311 (Fla. 2d DCA 2002). See also Chandler v. State, 702 So.2d 186 (Fla.1997). This does not mean, however, that the similar fact evidence must rise to the level of actual fingerprint evidence to be admissible.
These principles are illustrated in Evans v. State, 723 So.2d 855 (Fla. 4th DCA 1998), where the district court held that two robberies were sufficiently similar to satisfy the requirements for similar fact evidence. There, both robberies took place during the day; two weeks apart; the assailant was a young black male with noteworthy eyes; the victims were robbed while entering or leaving their vehicles; the assailant held a knife to their throats and swore at them; and the victims were older women who were alone.
Similarly, in State v. Ackers, 599 So.2d 222 (Fla. 5th DCA 1992), this court reversed the trial court’s decision to exclude evidence as similar fact evidence. In that case we found that although there were some differences in the manner in which two robberies had been committed, the similarities of modus operandi were strikingly similar: committed within a two week period, at fast food restaurants, located near one another; and committed at closing time.
Cardona argued that Calandra’s testimony was too dissimilar to be admissible under section 90.404(2)(a). The basis for this claim was:
*301 -the incidents occurred at different times of the year;
-the incidents occurred at different locations on the Rollins College campus; -that the perpetrators did not say the same thing to the women;
- the women’s description of the vehicles differed as to the number of doors and whether the vehicle was old or newer; -the level of physical aggression was different.
These differences are differences without distinction. The similarity and uniqueness of the two incidents involving Zvosec and Calandra are substantial:
-both incidents occurred on the Rollins College campus;
-both incidents occurred late in the afternoon between five and six o’clock;
-in both cases, the perpetrator was driving a dark green vehicle with tinted windows (Zvosec stated it might be a Honda type vehicle);
- in both cases the victims were walking on sidewalks on the campus, near parking;
- both women were in their early twenties; Rollins College co-eds;
- both women were alone;
- in both cases, the perpetrator stopped his vehicle with his window all the way down, and asked the women questions;
-in both cases, the questions pertained to locations of well-known buildings on the campus- — and both were specifically asked how to get to the campus center;
-in both cases, the perpetrator made sexual remarks to the victims after engaging them in conversation;
-in both cases the perpetrator exposed his penis; in one case he was masturbating and in the other he was touching it;
-in both cases the perpetrator was naked below the waist;
-in both cases the perpetrator committed the offenses within his vehicle;
- in both cases the perpetrator used his vehicle to follow the victims after contact; in one case following the victim and in the other remaining in the area for a few minutes and then almost running the victim over;
- both women described the perpetrator as a young man, Latin, with olive colored skin and dark hair. In fact, both women identified Cardona as the perpetrator of the assaults on them.
These facts show a clear pattern of behavior. The perpetrator scoped-out the Rollins College campus, between five and six p.m., during midterms. He drove a green car with tinted windows, he had the driver’s window down, and he was looking for young women who were walking alone. He then engaged their attention by asking for directions, in the hope that, in giving him directions, they would move towards his vehicle. Once they approached he used sexually explicit language while masturbating. When the victims ran or walked away, he followed them in his car, until he was interrupted. In Calandra’s case, another vehicle approached; in Zvo-sec’s her screaming, and apparently the attention it aroused, caused the interruption. As clearly as in any other proper Williams rule case, the facts in this case establish Cardona’s “signature” or “fingerprint” as the perpetrator in this offense. Further, any error, if it occurred with regard to admitting Calandra’s testimony, was harmless because both Zvosec and Raymond identified Cardona at trial.
There were only two differences in the episodes as to the modus operandi. First, Zvosec was physically attacked while Ca-landra was not. It seems apparent that Cardona did not physically grab Calandra because she did not approach his vehicle any closer than a few feet, and he there *302 fore had no opportunity to grab her. Zvo-sec approached his car to within inches. This is a difference in opportunities, as discussed in Chandler, not in Cardona’s plan. Undoubtedly, had Cardona had the opportunity to grab Calandra, he would have done so because his actions, taken as a whole, point in the direction of having physical contact with the women.
The second difference was that Zvosec believed the green car was a four door, while Calandra testified it was a two door, and Zvosec and Calandra differed as to the age of the car. However, when Zvosec was subsequently pressed as to the car’s age, she admitted she just didn’t know. Furthermore, these young women found themselves isolated and in the presence of an individual by whom they felt threatened. The women testified they were frightened and upset, and as is normal under these type circumstances, had some difficulty in remembering every detail of the incidents. Thus, it is unremarkable that their testimony contained minor differences.
II. Direct Evidence:
Raymond’s testimony was extremely limited. She was also a co-ed at Rollins College. Her testimony related only to having seen Cardona on the Rollins campus on the day and at the time of the attack on Zvosec. She testified that on April 12, 2001, the same day Zvosec was attacked, between five and five-thirty p.m., she was walking along the sidewalk on the Rollins campus, where the parking lot for the sports complex is located. She saw a dark green Honda or Acura with tinted windows. The car pulled up alongside her. The driver’s window was open all the way down. The man was olive-skinned, not white or black. No charges stemmed from this incident. She identified Cardona at the trial, as the driver.
Cardona claimed that Raymond’s testimony was collateral crime evidence because the State elicited testimony from Rosner that he came into contact with Raymond after she had been “involved in a suspicious incident involving what appeared to be the same person,” that Ros-ner had interviewed Raymond, and that he had shown her a photographic line-up. However, there was also testimony that no charges stemmed from this incident and no crime was committed on Raymond.
Rosner’s testimony merely establishes he investigated the offense committed against Zvosec. Neither his testimony regarding a “suspicious incident,” nor the suggestion that Raymond had an “encounter” is sufficient to portray Cardona as engaging in a bad or criminal act.
In my view, Raymond’s testimony does not constitute Williams rule evidence. Rather it was direct evidence which placed Cardona on the Rollins College campus on the date and hour of the attack on Zvosec.[5] It is similar to a security camera catching the image of a suspect entering a building where a crime was committed, close to the time of the commission of the crime. Raymond’s testimony was clearly relevant and admissible because it placed Cardona at or near the crime scene, near the time the crime was committed.

. § 787.02(2); § 790.10; and § 800.03, Fla. Stat. (2001).

. Williams v. State, 110 So.2d 654 (Fla.1959).

. That one victim lived and the other died.

. See State v. Savino, 567 So.2d 892, 894 (Fla.1990); Stephens v. State, 662 So.2d 394 (Fla. 5th DCA 1995).

. Where there is direct evidence regarding the offense charged, it is not similar fact evidence. Boroughs v. State, 684 So.2d 274 (Fla. 5th DCA 1996).