533 So.2d 744 (1988)
Anthony B. BRYAN, Appellant,
v.
STATE of Florida, Appellee.
No. 68803.
Supreme Court of Florida.
September 22, 1988.
Rehearing Denied December 5, 1988.
Ted A. Stokes, Milton, for appellant.
*745 Robert A. Butterworth, Atty. Gen. and Royall P. Terry, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
SHAW, Justice.
Bryan appeals his convictions for first-degree murder, kidnapping with a firearm and robbery with a firearm, and the imposition of the death penalty. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Appellant was arrested in Madison County, Florida, driving a stolen car in late August 1983. A sawed-off shotgun was found in the car. His companion, Sharon Cooper, was released soon thereafter and voluntarily went to the FBI with a report that appellant had robbed, kidnapped, and murdered the victim here, George Wilson, in early August 1983. Appellant was also wanted by the FBI for a 27 May 1983 bank robbery in Grand Bay, Alabama. After his return to Santa Rosa County for trial, appellant escaped in June 1984 and was recaptured in Colorado in October 1985. Appellant was convicted of bank robbery in federal court in April 1986 prior to the convictions here.
The chief witness for the state, Cooper, testified as follows. She met appellant in June 1983 in Jacksonville and the two hitchhiked to Mississippi where appellant obtained a truck. They then drove back to Florida, stopping en route for appellant to retrieve the hidden sawed-off shotgun which he had used in the bank robbery. At Gulf Breeze, Florida, appellant obtained a cabin cruiser outboard motor boat. Abandoning the truck, the two traveled by water to Mississippi. En route, the motor was damaged and they put in at Pascagoula, Mississippi, near a seafood wholesaler for whom the elderly victim worked as a night watchman. Appellant, who is an experienced commercial fisherman and former captain of a large shrimp boat, borrowed tools from the victim and others and unsuccessfully attempted to repair the cabin cruiser. Abandoning the boat, and using the shotgun, appellant robbed the victim of his wallet and keys and tied him up. After entering the seafood wholesaler, which was closed for the night, appellant returned and placed the bound victim in the back seat of the victim's car. The three then drove to Santa Rosa County for a short stay in a motel. Later in the morning, the victim was driven to an isolated area where, with his hands tied, he was marched at gunpoint to a creek. The victim, fearing for his life, asked that he not be crippled. Appellant struck the victim in the back of the head with the shotgun and, when he fell into the creek, killed him with a single blast to the face. Appellant then concealed the victim's car in a river and resumed his travels with Cooper until arrested in Madison County. Other evidence against appellant included: (1) his fingerprints taken from the abandoned cabin cruiser and testimony of witnesses who saw him in the vicinity of the wholesaler prior to the crimes; (2) identification of the sawed-off shotgun as the murder weapon by weapon experts and prints of appellant taken from the internal workings of the weapon; (3) the testimony of a federal prisoner that appellant confessed the crimes to him in Missouri and asked for his assistance in concocting an alibi, which testimony was corroborated by a written outline of the alibi in appellant's handwriting on paper which contained appellant's prints; (4) photographs of appellant robbing the bank with a sawed-off shotgun similar to the murder weapon and testimony from investigators and witnesses to the bank robbery showing that appellant had pawned and redeemed the unmodified shotgun prior to the bank robbery and that the sawed-off portion of the barrel and the stock were seized in appellant's home on the day of the bank robbery.
Appellant raises six issues for our consideration. Appellant first argues that evidence of other crimes was introduced contrary to section 90.404(2), Florida Statutes (1983), and Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). During its case-in-chief, the state introduced evidence which revealed that appellant had committed a bank robbery in late May 1983, approximately three months prior to the crimes here, and had stolen a boat in Gulf Breeze, approximately one week prior to the instant crimes. Appellant argues *746 that the evidence of bank robbery and boat theft did not contain facts significantly similar to the crimes charged, and, thus, in appellant's view, was inadmissible. The state argues that the evidence of these crimes was part of the res gestae and was thus admissible. Neither argument is particularly useful because neither focuses on the controlling question of relevancy. Res gestae has no clear meaning and has been criticized as a convenient ambiguity which is not only useless but harmful. Green v. State, 93 Fla. 1076, 113 So. 121 (1927); Williams v. State, 188 So.2d 320 (Fla. 2d DCA 1966), cert. discharged, 198 So.2d 21 (Fla. 1967); C. Ehrhardt, Florida Evidence § 803 (2d ed. 1984). The evidence here was direct testimony, the admissibility of which turned on its relevancy to some point at issue. Section 90.404(2) is entitled "Other Crimes, Wrongs, or Acts," as is Federal Rule of Evidence 404(b) on which our rule is based. Evidence of "other crimes" is not limited to other crimes with similar facts. So-called similar fact crimes are merely a special application of the general rule that all relevant evidence is admissible unless specifically excluded by a rule of evidence. The requirement that similar fact crimes contain similar facts to the charged crime is based on the requirement to show relevancy. This does not bar the introduction of evidence of other crimes which are factually dissimilar to the charged crime if the evidence of other crimes is relevant. As we pointed out in Williams:
Let us begin with a reminder that we here deal with so-called similar fact evidence which tends to reveal the commission of a collateral crime. Our initial premise is the general canon of evidence that any fact relevant to prove a fact in issue is admissible into evidence unless its admissibility is precluded by some specific rule of exclusion. Viewing the problem at hand from this perspective, we begin by thinking in terms of a rule of admissibility as contrasted to a rule of exclusion. With regard to similar fact evidence, illustrated by that in the case at bar, those who would exclude it invoke the principles of undue prejudice, collateral issues and immateriality. In so doing it appears to us that they disregard the basic principle of the admissibility of all relevant evidence having probative value in establishing a material issue.
... .
It will be seen that early in the history of the development of this rule in Florida, this court committed itself to the concept that all relevant evidence having probative value is admissible save to attack character even though it would have a tendency to suggest the commission of a separate crime. Killins v. State, 28 Fla. 313, 9 So. 711, and Langford v. State, 33 Fla. 233, 14 So. 815. Another often cited early decision is Wallace v. State, 41 Fla. 547, 26 So. 713, 718. Here again, citing as authority among other cases State v. Lapage 57 N.H. 245 and Makin v. Attorney General of New South Wales, supra, this court stated its position to be that proof of any fact with its circumstances even though amounting to a distinct crime is admissible if it has "some relevant bearing upon the issue being tried". Once more we find relevancy to be the test of admissibility. If the proffered evidence is relevant to a material fact in issue, it is admissible even though it points also to a separate crime.
Williams, 110 So.2d at 658, 660 (emphasis in original). The only limitations to the rule of relevancy are that the state should not be permitted to make the evidence of other crimes the feature of the trial or to introduce the evidence solely for the purpose of showing bad character or propensity, in which event it would not be relevant, and such evidence, even if relevant, should not be admitted if its probative value is substantially outweighed by undue prejudice. Our later case law reiterates the controlling importance of relevancy. In Randolph v. State, 463 So.2d 186, 189 (Fla. 1984), cert. denied, 473 U.S. 907, 105 S.Ct. 3533, 87 L.Ed.2d 656 (1985), we reexamined Williams and stated:
In that case the Court laid down the test of the admissibility of such evidence as being one of relevancy. Even if the evidence in question tends to reveal the *747 commission of a collateral crime, it is admissible if found to be relevant for any purpose save that of showing bad character or propensity.
In Ruffin v. State, 397 So.2d 277 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981), we rejected the argument that such evidence must be necessary, not merely relevant.
In Williams v. State, we announced a broad rule of admissibility based upon relevancy. Necessity has never been established by this Court as an essential requisite to admissibility. In Williams, we declared that any fact relevant to prove a fact in issue is admissible into evidence even though it points to a separate crime unless its admissibility is precluded by a specific rule of exclusion.
Ruffin, 397 So.2d at 279-80. Similarly, in Ashley v. State, 265 So.2d 685, 694 (Fla. 1972), we held:
So long as evidence of other crimes is relevant for any purpose the fact that it is prejudicial does not make it inadmissible. All evidence that points to a defendant's commission of a crime is prejudicial. The true test is relevancy.
In the case at hand, the evidence surrounding the bank robbery was relevant to the issue of ownership and possession of the murder weapon by appellant. The state was able to match the registration number of the murder weapon to a shotgun which appellant had pawned and redeemed prior to the bank robbery. It was also able to show that the residue from the modification of the murder weapon had been seized in appellant's home immediately following the bank robbery. Further, it was able to show that appellant used a sawed-off shotgun similar in appearance to the murder weapon in the bank robbery. Only on this last point do we find error. Although the picture of appellant with a sawed-off shotgun committing a bank robbery was relevant to possession of the murder weapon prior to the crimes here, we believe that any evidence of the bank robbery or the picture's probative value was substantially outweighed by the danger of unfair prejudice. § 90.403, Fla. Stat. (1983). The state had a plethora of other evidence showing that appellant owned and possessed the murder weapon prior to, during, and following the murder here. Introducing the picture of the bank robbery added little to this evidence but unfair prejudice. We are satisfied, however, that the error was harmless in that it had no effect on the jury verdict. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Concerning the boat theft, the officer investigating the disappearance of the victim on the following day discovered the abandoned boat near the victim's home and learned that two unidentified strangers, appellant and Cooper, who were also missing, had been present and in possession of the boat as late as the previous day. A check of the registration number of the boat led to the owner who identified it as a boat taken from his home in Gulf Breeze, Florida. Prints taken from the boat were matched with appellant and linked him to the abduction scene. This line of investigation took place prior to the discovery that the victim had been kidnapped and murdered. There was also testimony from other witnesses placing appellant at the abduction scene. Appellant suggests that his presence there was not at issue inasmuch as he took the stand and so testified. This overlooks the fact that appellant pled not guilty and placed all facts in issue. The state is required and entitled to prove the facts supporting the charged crimes and is not required to withhold evidence from the jury because the defendant might take the stand and concede the fact. The evidence that appellant took the boat from Gulf Breeze to Pascagoula, coupled with his prints on the boat, served to place appellant in Pascagoula in contact with the victim. Had the state not shown that appellant brought the boat to Pascagoula, the jury could have believed that the prints were innocently left on the boat, perhaps in Gulf Breeze, and that the boat had been brought to Pascagoula by some unknown person. The trial judge ruled that the evidence was relevant because it was close enough in time to the crimes to give the jury a full and accurate picture of how appellant came *748 into contact with the victim and the full context of the crimes. See Jackson v. State, 522 So.2d 802, 805 (Fla. 1988) (quoting Smith v. State, 365 So.2d 704, 707 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979)): "`Among the other purposes for which a collateral crime may be admitted under Williams is establishment of the entire context out of which the criminal conduct arose.'" We see no error.
Appellant's second argument is that the state withheld the tape of a phone conversation that appellant had with Cooper and that the trial court failed to conduct a hearing in accordance with Richardson v. State, 246 So.2d 771 (Fla. 1971). Appellant took the stand in his own behalf and denied the testimony of a former prison hospital mate that he had confessed the crimes and attempted to obtain assistance in concocting an alibi. On cross-examination, the prosecutor asked if appellant remembered a phone conversation he had with Sharon Cooper concerning an alibi. At that point, counsel objected and the trial judge heard argument outside the presence of the jury. It developed that Cooper had called appellant after he was arrested, that the conversation had been taped, and that appellant had told Cooper of the alibi he had concocted with his former prison hospital mate. Appellant's counsel argued that he had specifically asked for discovery information about the conversation and a copy of any tapes. The prosecutor responded that he had brought a copy of the tape to an earlier pretrial hearing, told counsel that he had the tape, and offered to let him hear it. Counsel could not recall but did not deny the incident. The prosecutor offered to defer recalling Cooper on rebuttal until after counsel heard the tape and the possibility of Cooper testifying without the tape being introduced was discussed. After a recess and consideration, the trial judge ruled that the state could use the tape if it wished, but the state decided to rely on Cooper's testimony alone. On rebuttal, Cooper answered yes to questions of whether she had listened to a tape of the conversation and whether appellant had told her of the concocted alibi. Appellant argues that the trial judge did not conduct an adequate Richardson hearing and that he was severely prejudiced by the failure of the state to provide the tape. We disagree. The judge inquired fully into the dispute and obviously concluded that the prosecutor had offered the tape to the defense and that there had been no discovery violation. We note also that the prison hospital mate's testimony, which directly contradicted appellant's testimony, was strongly supported by the alibi outline in appellant's handwriting with his prints thereon.
On his third issue, appellant argues that the trial court erred in imposing the death sentence by finding aggravating circumstances which were not present and by failing to find mitigating circumstances which were present. We disagree. It is obvious from the order and the record on which it is based that the judge relied on six aggravating circumstances from section 921.141(5), Florida Statutes (1983): (b) previous conviction of felony involving the use or threat of violence to the person; (d) capital felony committed while engaged in commission of kidnapping and robbery; (e) capital felony committed to avoid lawful arrest; (f) capital felony committed for pecuniary gain; (h) capital felony was especially heinous, atrocious, or cruel; and (i) capital felony was committed in cold, calculated, and premeditated manner without any pretense of moral or legal justification. Circumstance (b) is supported by appellant's previous conviction for bank robbery. Circumstance (d) is supported by appellant's concurrent convictions for both kidnapping and robbery. Circumstance (f) is supported by the conviction for robbery in taking the victim's wallet and car and does not duplicate circumstance (d) because that circumstance was also based on kidnapping. Appellant's argument that the car was of little value and was soon discarded merits no comment. Circumstances (e) and (i) are supported by the evidence that after the victim was robbed of his wallet and car keys, he was nevertheless kidnapped and taken to a distant and isolated area for the murder. The only conclusion that can be *749 drawn from this evidence is that appellant, who was a wanted bank robber, did not want the victim to raise an alarm after the robbery and coldly calculated that he must be murdered and his body disposed of so as to avoid detection. In this connection, we note that the body was not discovered until approximately a month later after Cooper went to the police and assisted in the search for the body. Circumstance (h) is supported by the evidence that the victim was kidnapped, held for hours under physical duress and fear for his life, transported to an isolated area, marched at gunpoint to a creek bank, after asking that he not be crippled, struck and felled by a blow to the back of the head, and killed at short range by a sawed-off shotgun blast to the face. In mitigation, the court found that appellant had a good work record prior to robbing the bank and that he had been gainfully employed and law abiding for over a year in Arizona after he escaped from the Santa Rosa jail. Appellant argues that other mitigating circumstances should have been found, e.g., appellant was under substantial domination of Cooper who only received one year jail time and probation; appellant was under extreme mental or emotional disturbance and was unable to appreciate criminality of conduct or to conform behavior to requirements of law. We disagree. The judge, and the jury, considered the aggravating and mitigating evidence and concluded that the aggravation outweighed the mitigation and there was sufficient aggravation to warrant the death penalty. It is not the function of this Court to substitute its sentencing judgment for that of the trial judge. As a matter of law,
[f]inding or not finding that a mitigating circumstance has been established and determining the weight to be given such ... is within the trial court's discretion and will not be disturbed if supported by competent substantial evidence. Stano v. State, 460 So.2d 890 (Fla. 1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 863 (1985).
State v. Bolender, 503 So.2d 1247, 1249 (Fla.), cert. denied, ___ U.S. ___, 108 S.Ct. 209, 98 L.Ed.2d 161 (1987). On this record, the judge did not err in imposing the death penalty as the jury recommended.
Appellant next urges that the murder weapon, which was seized when he was arrested driving a stolen car, should have been suppressed. This argument is meritless. The officer was justified in seizing the weapon either incident to the arrest or as part of the standard inventory when the stolen car was impounded. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987).
On his fifth issue, appellant argues that the trial court erred in not granting a mistrial because of prosecutorial misconduct during the guilt phase. Numerous instances are cited, but only one merits comment. Appellant took the stand in his own behalf and testified concerning his exemplary and prosperous life prior to an accidental injury, the bank robbery, and subsequent flight from the law. He then leaped forward in time to Pascagoula where he attempted to repair the boat and met the victim. Appellant denied that he robbed or kidnapped the victim, claiming he agreed to accompany Cooper and the victim to Santa Rosa County where, according to appellant, the victim and Cooper were going to make a drug deal. According to appellant, he went to sleep in the motel and his two companions left. When Cooper returned, she said that drug dealers had killed the victim and that she and appellant must dispose of the car and flee. Appellant also denied concocting an alibi with his prison hospital mate. By taking the stand, defendant opened himself up to questions relative to his testimony and credibility, just as any other witness does. Booker v. State, 397 So.2d 910, 914 (Fla.), cert. denied, 454 U.S. 957, 102 S.Ct. 493, 70 L.Ed.2d 261 (1981). Moreover, a defendant witness is under an obligation to speak truthfully and accurately. Johnson v. State, 380 So.2d 1024, 1026 (Fla. 1979). Cross-examination to test witness credibility and to explore subjects opened up on direct examination is generally broad. Jones v. State, 440 So.2d 570, 576 (Fla. 1983). As we said in Coco v. State, 62 So.2d 892, *750 895 (Fla. 1953) (quoting approvingly from American Jurisprudence),
"cross-examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut or make clearer the facts testified to in chief by the witness on cross-examination."
We see no point in pursuing the details of the cross-examination. The thrust of the examination was to draw out other relevant facts omitted on direct and to test appellant's credibility. Appellant's responses tended to be nonresponsive and evasive with many declarations of poor memory. Consequently, the prosecutor pressed harder with questions suggesting that the appellant had a highly selective memory limited to exculpatory matters and that his credibility was very poor. Numerous objections were raised and denied. The questioning appears to have been vigorous but proper under the rules for cross-examination. However, we are concerned, as was the trial judge, that the cross-examination focused more on other crimes than is desirable. At some point, even proper cross-examination of an evasive or ineffective witness, as here, may reach the point of diminishing returns where the probative value of further cross-examination on other crimes is outweighed by its prejudicial impact. Nevertheless, a trial judge has wide discretion to determine the permissible scope of cross-examination. Demps v. State, 395 So.2d 501, 505 (Fla.), cert. denied, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981). Given this wide discretion, we are not prepared to say that the other crimes were made the focus of the trial.
Appellant's final issue is an assertion that he should have been granted a new trial because the verdict was contrary to the weight of the evidence. The only point that merits comment is the claim that the state failed to prove the identity of the victim. The state introduced expert evidence that prints taken from the victim were matched with prints from a Pascagoula police file on George Wilson and with prints taken from the home of George Wilson. Corpus delicti, which encompasses identity of the victim, requires only prima facie proof. Jefferson v. State, 128 So.2d 132 (Fla. 1961); State v. Snowden, 345 So.2d 856 (Fla. 1st DCA). cert. denied, 353 So.2d 679 (Fla. 1977). There was an abundance of evidence, aside from conclusive fingerprint identification, that the victim was George Wilson of Pascagoula, Mississippi, including the testimony of the appellant that he accompanied George Wilson to Santa Rosa County where he was murdered by drug dealers. We are satisfied that identity was shown beyond any reasonable doubt.
We affirm the convictions and the imposition of the death penalty.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, GRIMES and KOGAN, JJ., concur.
BARKETT, J., concurs in result only.