641 So.2d 61 (1994)
Anthony B. BRYAN, Petitioner,
v.
Richard L. DUGGER, etc., Respondent.
Anthony Braden BRYAN, Appellant,
v.
STATE of Florida, Appellee.
Nos. 76684, 78885.
Supreme Court of Florida.
June 16, 1994.
Rehearing Denied August 19, 1994.
*62 Michael J. Minerva, Capital Collateral Representative, Martin J. McClain, Chief Asst. CCR and Gail E. Anderson, Asst. CCR, Office of the Capital Collateral Representative, Tallahassee, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen. and Richard B. Martell, Asst. Atty. Gen., Tallahassee, for respondent/appellee.
PER CURIAM.
Anthony Braden Bryan (Bryan), a prisoner under sentence of death, petitions for a writ of habeas corpus and appeals the trial court's denial of relief, after an evidentiary hearing, on Bryan's rule 3.850 motion.[1] We have jurisdiction. Art. V, § 3(b)(1), (9), Fla. Const. We affirm the trial court and deny relief on the writ of habeas corpus.
Bryan robbed, kidnapped, and murdered George Wilson in 1983. Bryan v. State, 533 So.2d 744, 745 (Fla. 1988), cert. denied, 490 U.S. 1028, 109 S.Ct. 1765, 104 L.Ed.2d 200 (1989). The jury recommended death by a vote of seven to five and the trial judge imposed the recommended sentence, finding six aggravating and two mitigating circumstances. Subsequent to the signing of the death warrant, the trial judge granted a stay and a hearing on Bryant's 3.850 motion. Relief was denied.

3.850 MOTION
Bryan raises twelve issues in his appeal from the denial of his rule 3.850 motion.[2] Issues three through eight and eleven, *63 which are essentially the same as issues two through eleven in Bryan's habeas corpus petition, are procedurally barred. The deficiencies listed in issue nine do not allege sufficient facts to demonstrate ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Issue ten was addressed on direct appeal. Bryan, 533 So.2d at 748. Bryan cannot now reargue this same claim under a new theory. Quince v. State, 477 So.2d 535, 536 (Fla. 1985), cert. denied, 475 U.S. 1132, 106 S.Ct. 1662, 90 L.Ed.2d 204 (1986). Issue twelve, as Bryan concedes, is an aggregate of several issues that have been previously asserted on direct appeal or are currently being raised. Having addressed these issues elsewhere, we find no merit in addressing them now. The only issues that merit discussion are issues one and two in which Bryan asserts that his trial counsel's penalty-phase performance was deficient. In order to prevail on this claim, Bryan must show counsel's deficient performance and a reasonable probability that, but for the deficient performance, the sentence would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Downs v. State, 453 So.2d 1102 (Fla. 1984). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. Our review of the record and the trial judge's findings of fact indicate that the judge's findings are supported by the record. The findings of fact were as follows:
The thrust of the evidentiary hearing in this case was that defense counsel, Ted A. Stokes, did err for failing to present the mental health defense through live testimony, rather than submitting their reports prepared for a considered but rejected insanity defense. Furthermore, it is alleged that Mr. Stokes did not properly prepare the Defendant's family members for their testimony relating to non-statutory mitigating circumstances and that he failed to obtain the testimony of other family members who might give such evidence. It is further argued that Mr. Stokes' deficient performance in this area is not the result of a strategic decision but rather a failure to meet a reasonably competent standard of performance.
At the penalty phase, Mr. Stokes called several family members as well as a former employer for non-statutory mitigating circumstances. In addition, he admitted into evidence the mental health evaluations of the Defendant prepared by Dr. Barbara Medzerian (two separate evaluations), Dr. Ellen Gentner, Dr. Jose C. Montes, and Dr. Philip B. Phillips. Further admitted were a psychiatric examination from Arizona State Hospital dated 8/6/70, and records from Camelback Psychiatric Hospital 10/10/73, both relating to Jean Hanley, an aunt of the Defendant. Records from Phoenix Baptist Hospital and Medical Center on Keith Hanley, a relative, were also introduced. Copies of these documents are attached to this Order.
Mr. Stokes did not call every member of the Defendant's family as there was at that time some alienation within the family, and some family members were not helpful. The additional testimony from other family members would only have been cumulative. Mr. Stokes talked with several family members on many occasions, even sending an investigator to Arizona to talk with Mr. Bryan's aunt, Jean Hanley, and other persons he had worked for while in Arizona. *64 Mr. Stokes testified at the evidentiary hearing that he understood his duty in the penalty phase was to humanize the Defendant for the jury. He made a tactical decision not to call Dr. James Larson as a witness as Dr. Larson told him, only moments before he would have testified, that his testimony would not be helpful.
Although live testimony from the other mental health experts might have been helpful to the jury and judge, Mr. Stokes did introduce their written reports. The defense has not been able to present evidence or an argument to support their position that live testimony would have been more persuasive to a jury than the written documents. Further, the decision not to submit the Springfield, Missouri, records was also the result of a tactical decision by Mr. Stokes. None of the mental health experts testified at the evidentiary hearing that their conclusions as to the Defendant's mental state would have been changed through the receipt of the additional information submitted in preparation for this post-conviction relief proceeding.
... .
Although in hindsight Mr. Stokes might have presented his case differently to the sentencing jury, this Court does not find that his performance was below the "broad range of reasonably competent performance under prevailing professional standards." Maxwell [490 So.2d 927] at 932. Furthermore, this Court finds that there is no reasonable probability of a different sentencing result had the proffered family background testimony and the live testimony of the mental health experts, both presented at the evidentiary hearing, been offered during the 1986 penalty phase. This conclusion is made also in light of the six aggravating circumstances supported by the record and the Florida Supreme Court on direct appeal.
The record reflects that the judge's findings are based on competent substantial evidence.
This is not a case which defense counsel failed to prepare. Counsel had Bryan examined by seven mental health experts. He did not call Dr. Larson as a witness after the doctor told him that his testimony would not be helpful and that it suggested the possibility of malingering. He had Dr. Gentner under subpoena, but she was out of the state during the trial. Apparently, Dr. Medzerian came to testify in her place but counsel was not aware of her presence.
To introduce the medical reports of certain experts instead of having these experts testify in person was clearly a tactical decision. Several of the doctors indicated that Bryan had no memory of the circumstances surrounding the murder. Bryan, during the guilt phase of the trial and in contravention of the doctors' testimonies, testified in detail about the circumstances surrounding the murder. There was a clear danger that if the doctors were put on the witness stand they would discredit his veracity. Furthermore, of the three doctors who testified at the post-conviction hearing, Dr. Gentner did not believe Bryan met the criteria for either of the statutory mitigators and the other two doctors felt that only one mitigator existed. Each of the medical reports clearly indicated the existence of mental abnormalities, so Stokes was able to persuasively argue both statutory mental mitigators from these reports. The fact that the language of the reports was not couched in the exact terms of statutory mental mitigators does not mean that they were not used effectively.
As for nonmedical evidence, Stokes introduced the testimony of Bryan's mother, grandmother, and aunt as well as his ex-wife, a former employer, and a friend. The evidence supports the trial judge's conclusion that because of alienation between them, not all of the family would present favorable testimony. As noted in Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.), cert. denied, 479 U.S. 972, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986):
The fact that a more thorough and detailed presentation could have been made does not establish counsel's performance as deficient. It is almost always possible to imagine a more thorough job being done than was actually done.
In spite of the existence of six statutory aggravating circumstances and a gruesome murder preceded by a kidnapping, defense *65 counsel was able to persuade five jurors to recommend life imprisonment. Now, several years after the fact, Bryan argues that if his lawyer had employed different tactics there is the possibility that he would have received a life sentence. After a full evidentiary hearing, the trial judge denied relief and the record supports his ruling. Accordingly, we affirm the order denying post-conviction relief.

WRIT OF HABEAS CORPUS
Bryan's petition for writ of habeas corpus raises the following issues: (1) the written sentencing order failed to demonstrate a reasoned judgment and violated Bryan's right to a reliable weighing by the sentencer; (2) the prosecutor's comments at the guilt and penalty phases rendered Bryan's conviction and sentence fundamentally unfair and unreliable;[3] (3) the sentencing court refused to find mitigating circumstances that were clearly set out in the record; (4) the "avoid arrest" aggravating factor was improperly applied; (5) evidence of victim impact and other impermissible factors violated Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), overruled by Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991); (6) prosecutorial and judicial comments and instructions diminished the jury's sense of responsibility, contrary to Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); (7) the trial court's jury instruction improperly shifted the burden of proving the inappropriateness of the death penalty to Bryan and the trial judge employed this improper standard when he imposed the death sentence; (8) the trial court erroneously and unconstitutionally applied the cold, calculated and premeditated aggravating factors; (9) the jury was improperly instructed on aggravating circumstances in violation of Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); (10) the trial court erred in admitting collateral crime evidence when admission of the same evidence was cause for a mistrial in a previous trial; and (11) non-statutory aggravating factors, which were objected to at trial, tainted Bryan's sentence of death and appellate counsel was ineffective for not raising this matter on appeal.
On direct appeal, Bryan argued that the trial court's sentencing order was improper. Having argued this issue on direct, Bryan cannot now reargue the same issue on different grounds. Breedlove v. Singletary, 595 So.2d 8, 10 (Fla. 1992). Thus issue one is procedurally barred. Issues two, three, four, and eight, were raised on direct appeal and issues two, six, seven, and nine, should or could have been raised on direct appeal. These issues are now procedurally barred. Breedlove, 595 So.2d at 10. Issues five and ten were not contemporaneously objected to at trial, therefore they cannot be raised as grounds for appellate relief. Clark v. Dugger, 559 So.2d 192 (Fla. 1990). Procedurally barred issues cannot be heard under a writ of habeas corpus, nor can Bryan circumvent this bar by alleging ineffective assistance of counsel. Breedlove, 595 So.2d at 10. Issue eleven alleges that non-statutory aggravating factors tainted Bryan's sentence of death and appellate counsel was ineffective for not raising this issue on direct appeal. To show ineffective assistance of appellate counsel, Bryan must: (1) detail the specific omission or overt act upon which the claim is based; (2) show that the omission or act was a substantial and serious deficiency measurably below the standard of competent counsel; and (3) prove this specific, serious deficiency, in light of the individual case, was substantial enough to demonstrate a prejudice to the defendant to the extent that there is a likelihood that the deficient conduct affected the outcome of the court proceedings. Knight v. State, 394 So.2d 997, 1001 (Fla. 1981). Given the overwhelming evidence[4] of guilt and after a careful review of the record, we conclude that appellate counsel's actions were not so seriously deficient as to result in prejudice to Bryan to the extent that it affected the outcome of the court proceedings.
*66 Based on the above, we deny the petition for writ of habeas corpus.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] Florida Rule of Criminal Procedure.
[2] The issues raised by Bryan are: (1) ineffective assistance of counsel at the penalty phase; (2) defense counsel's ineffectiveness resulted in a denial of Bryan's right to effective and adequate mental health assistance; (3) the jury instructions on aggravating circumstances were constitutionally invalid; (4) the trial court failed to find all mitigating circumstances; (5) the introduction of nonstatutory aggravating circumstances resulted in an arbitrary and capricious imposition of the death penalty; (6) improper prosecutorial comments throughout the trial and sentencing; (7) counsel was ineffective for failing to litigate that the sentencing jury was misled by instructions and arguments which diluted their sense of responsibility; (8) counsel was ineffective for failing to object to a shifting of the burden of proof in the jury sentencing instructions; (9) effective assistance of counsel was denied at the guilt/innocence phase of the trial; (10) the state unconstitutionally used a codefendant/informant to obtain statements from Bryan and failed to disclose the statements to defense prior to trial; (11) protection against double jeopardy, as provided by principles of collateral estoppel, was denied; and (12) the combination of procedural and substantive errors was not harmless and deprived Bryan of a fair trial.
[3] The opinion on direct appeal only addressed this issue with respect to the guilt-phase proceedings. Bryan, 533 So.2d at 749.
[4] The evidence included eyewitness testimony, Bryan's fingerprints on the murder weapon, and his oral and written confessions. Bryan, 533 So.2d at 745.