748 So.2d 1003 (1999)
Anthony Braden BRYAN, Appellant,
v.
STATE of Florida, Appellee. Anthony Braden Bryan, Petitioner
v.
Michael Moore, Secretary, Department of Corrections, State of Florida Respondent.
Nos. 96,802, 96,821.
Supreme Court of Florida.
October 26, 1999.
*1005 Gregory C. Smith, Capital Collateral Counsel, and Andrew Thomas, Assistant CCRC-Northern Region, Tallahassee, Florida, for Appellant/Petitioner.
Robert A. Butterworth, Attorney General, and Richard B. Martell, Chief, Capital Appeals, Tallahassee, Florida, for Appellee/Respondent.
PER CURIAM.
Anthony Braden Bryan, a prisoner scheduled for execution on October 27, 1999, appeals the trial court's summary denial of his motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, and has simultaneously filed a petition for writ of habeas corpus. We have jurisdiction. Art. V, § 3(b)(1), (9).
Bryan was charged and convicted of first-degree murder, kidnapping, and robbery, and was sentenced to death. The facts and procedure are as follows: Bryan and Sharon Cooper robbed and kidnapped George Wilson, the victim, in Mississippi; they drove him to a remote area in Santa Rosa County, Florida, in his own car; and Bryan shot him in the face with a shotgun. Bryan and Cooper fled, submerged the car in a river but were later arrested on other grounds. The police (unaware of the murder) held Bryan on an outstanding warrant for his arrest but released Cooper. Cooper traveled to Jacksonville and confessed to an FBI agent, who had her transported back to Santa Rosa County where she, local authorities, and federal authorities looked for the victim's body. They eventually recovered the victim, a nearby shotgun shell, and the car. The State obtained the above convictions based on Cooper's testimony; the testimony from a prisoner that Bryan confessed and asked him to provide a false alibi, which was corroborated by a note in Bryan's handwriting outlining the alibi and with his fingerprints on the paper; and recovery of the murder weapon that the State proved was Bryan's, also with his fingerprints thereon. Bryan testified in his own defense, claiming that he did not kill the victim and that Cooper killed him when a drug deal went bad. The jury found Bryan guilty as charged. See Bryan v. State, 533 So.2d 744, 745 (Fla.1988).
The jury recommended death by a vote of seven to five. In the sentencing order, the trial court imposed the recommended sentence after finding six aggravating and two mitigating circumstances. The aggravating circumstances were (1) appellant's previous conviction for a violent felony; (2) commission of the murder during a kidnapping and robbery; (3) commission to avoid arrest; (4) commission for pecuniary gain; (5) the heinous, atrocious, and cruel nature of the murder, and the (6) cold, calculated, and premeditated nature of the murder. The mitigating circumstances were (1) Bryan had a good work record, and (2) he was law abiding for one year after escaping from Santa Rosa County Jail. This Court affirmed Bryan's conviction and sentence and the United States Supreme Court denied certiorari. See id.; Bryan v. Florida, 490 U.S. 1028, 109 S.Ct. 1765, 104 L.Ed.2d 200 (1989).
Governor Martinez denied clemency and signed Bryan's first death warrant setting execution for October 30, 1990. Bryan then filed a rule 3.850 motion with the trial court which granted a stay of execution. After an evidentiary hearing, the trial court denied relief. In 1994, this Court *1006 affirmed the trial court's denial and simultaneously denied the petition for writ of habeas corpus that Bryan filed in October 1991. See Bryan v. Dugger, 641 So.2d 61 (Fla.1994). Meanwhile, on September 24, 1993, Bryan and others filed a complaint raising the issue of whether executive clemency records are subject to discovery under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The trial court dismissed the complaint with prejudice and, on appeal, this Court held that Brady is inapplicable to clemency proceedings and denied relief. See Asay v. Florida Parole Comm'n, 649 So.2d 859, 860 (Fla.1994). In September 1994, a postconviction investigator requested access to Bryan's files held by the Attorney General's Office and the State Attorney's Office. Upon inspection of the revealed documents, postconviction counsel noticed that some documents were withheld and filed a complaint. In February 1996, the trial court denied Bryan access to particular records after holding a hearing during which it reviewed the pertinent documents in camera and found them exempt under chapter 119, Florida Statutes (1995). This Court affirmed the trial court's order. See Bryan v. Butterworth, 692 So.2d 878 (Fla. 1997).
In the federal courts, on October 19, 1994, Bryan filed a petition for writ of habeas corpus in the United States District Court, Northern District of Florida, which denied relief in an unpublished order. See Bryan v. Singletary, No. 94-C30327 (N.D.Fla. July 7, 1996). The United States Court of Appeals for the Eleventh Circuit affirmed the order, Bryan v. Singletary, 140 F.3d 1354 (11th Cir.1998), and the United States Supreme Court denied certiorari on February 22, 1999. See Bryan v. Singletary, 525 U.S. 1159, 119 S.Ct. 1068, 143 L.Ed.2d 72 (1999).
Governor Bush signed Bryan's second death warrant on September 23, 1999, setting execution for Wednesday, October 27, 1999. On September 23, 1999, postconviction counsel served public records requests to twenty state agencies pursuant to Florida Rule of Criminal Procedure 3.852(h)(3). On October 13, 1999, the trial court held a status hearing during which it ordered that Bryan was required to file his rule 3.850 motion by Friday, October 15, and allowed him to file a supplemental motion on the following Monday. Bryan filed motions accordingly.[1] On Tuesday, October 19, 1999, the State filed its responsive motion and the trial court held a hearing pursuant to Huff v. State, 622 So.2d 982 (Fla.1993). On October 21, 1999, the trial court issued an order denying relief.

RULE 3.850
As to Bryan's first issue, we hold that the trial court did not abuse its discretion in deciding that Bryan's right to public records was not denied under section 119.19, Florida Statutes (Supp.1998), and Florida Rule of Criminal Procedure 3.852(h)(3). The trial court found that Bryan simply filed a "plethora of demands... to nearly every public agency that had any contact" with him, and that he failed to identify specific concerns or issues to the trial court that would warrant relief. The trial court therefore found Bryan's requests to be "at best a `fishing expedition' and at worst a dilatory tactic." The trial court further noted that Bryan has "not shown good cause why these new public records requests were not made until after the death warrant was signed." See Buenoano v. State, 708 So.2d 941, 947 (Fla.)("[Public records requests] shall not serve as a basis for a stay of execution unless Buenoano makes a showing that the documents sought contain newly discovered evidence likely to entitle her to relief."), cert. denied, 523 U.S. 1043, 118 S.Ct. 1358, 140 L.Ed.2d 507 (1998). Thus, the trial court properly denied relief.
*1007 Bryan's second claim is that the trial court erred in denying relief based on trial counsel's alleged ineffectiveness during the guilt phase in failing to submit testimony from Cooper regarding Bryan's mental state. We disagree. First, this issue is procedurally barred. See Fla. R.Crim. P. 3.850(b)(1); Pope v. State, 702 So.2d 221, 223 (Fla.1997); Mills v. State, 684 So.2d 801, 805 n. 9 (Fla.1996). Even if this claim was not barred, Bryan would not be entitled to relief under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[2] Trial counsel asked Cooper about Bryan's mental state during a pretrial deposition wherein she affirmed that "he knew right from wrong" and stated, "I would not say he was insane. He was fully aware of what he was doing[.]" Thus, even though Cooper stated that Bryan was "crazy" and "acting real strange," which could arguably support a mental-state defense, she also made statements otherwise. To that end, Cooper could have provided additional damaging information about Bryan's ability to plan and carry out criminal offenses. Thus, even if this claim was not barred, Bryan's inability to satisfy Strickland would have denied him relief.
Bryan's third claim also affords no relief. This is a restatement of issue two applied to the sentencing phase, which is procedurally barred because it is based on evidence that could have been discovered earlier. See Fla. R.Crim. P. 3.850(b)(1); Pope, 702 So.2d at 224; Mills, 684 So.2d at 805 n. 9. Alternatively, Cooper could have provided additional damaging testimony about Bryan's conduct during the time in question; thus, counsel was not deficient in deciding not to call her as a witness. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
The trial court properly denied Bryan's fourth claim as procedurally barred since Bryan raised a claim of ineffective assistance of mental health experts under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), in his previous rule 3.850 motion and because the information in support of this claim was available at the time of trial. See Fla. R.Crim. P. 3.850(b)(1); Pope, 702 So.2d at 224; Mills, 684 So.2d at 805 n. 9. Furthermore, Bryan's recent claim that his mental health experts and trial counsel lacked facts upon which to explore his alleged drug use, drinking problem, and sleep deprivation at the time of the crime is undermined by his own failure to provide such facts himself. Rather, Bryan insisted that he did not commit the murder. Bryan testified at trial that he slept while Cooper and the victim were on a drug deal from which the victim never returned, and he attributed the murder to Cooper. The tape of a Cooper-to-Bryan telephone call would not have further illuminated Bryan's mental state at the time of the offense since it was made three weeks later. We would also note that Bryan's sanity at the time of the offense was initially contested by the defense and that Bryan was thoroughly examined by several experts. See Bryan, 641 So.2d at 64. Thus, the trial court properly denied relief.
The fifth issue submitted by Bryan is whether the State violated his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Brady v. Maryland, 373 U.S. 83, 83 *1008 S.Ct. 1194, 10 L.Ed.2d 215 (1963),[3] based on the creation and alleged suppression of the tape. This claim is procedurally barred because the tape was available at trial. With due diligence it would have been discovered. See Fla. R.Crim. P. 3.850(b)(1). Bryan's claims also fail on the merits. First, the State introduced Cooper's testimony about the tape to rebut Bryan's testimony that he did not speak to Cooper about his false alibi when he was in jail. Since the testimony was on rebuttal, the failure to inform Bryan of his rights under Miranda at the time the tape was made did not prevent the State's use thereof. See Mincey v. Arizona, 437 U.S. 385, 397-398, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)(holding that while statements of a defendant taken in violation of Miranda may be excluded from the government's case-in-chief, a Miranda violation alone does not prevent the use thereof for impeachment if the defendant testifies). Second, Bryan's reliance on the tape to allege a violation of Brady is meritless because the existence of this tape was know by defense counsel at the time of trial as evidenced by an extensive discussion thereon. The record reveals that the State denied withholding the tape from Bryan and stated: "Your Honor, I can delay utilizing this until rebuttal if defense wants to listen to it and do anything they want to do with it." Trial counsel's alleged failure to listen to the tape was compounded by postconviction counsel's failure to compel discovery of this known piece of evidence. Because defense counsel, from the trial through the postconviction proceedings, knew of the tape, it can hardly be said that the State violated Brady.
The trial court also properly denied relief as to issue six, Bryan's assertion that he is entitled to a second clemency proceeding with counsel. This Court recently rejected such a claim in Provenzano v. State, 739 So.2d 1150, 1155 (Fla.1999)(citing Bundy v. State, 497 So.2d 1209, 1211 (Fla.1986)).
Issue seven is likewise unavailing. The trial court properly denied relief pursuant to Bryan's cumulative-error argument because where allegations of individual error are found without merit, a cumulative-error argument based thereon must also fail. See Downs v. State, 740 So.2d 506, 518 (Fla.1999).
Bryan's last issue concerning the alleged discovery of a note also provides no basis for relief. The anonymous note recovered in the recent public records disclosure contains a map, the words "shotgun shell" and "body location," and is dated September 1, 1983-two days prior to the date the State claimed Cooper successfully helped the police find the victim's body. Thus, according to Bryan's theory, the note provides Brady impeachment evidence that could have been used to undermine Cooper's critical testimony. The record shows, however, that Cooper testified that when she initially went to the police, they seemed (to her knowledge) ignorant of the instant murder. She then led the police in a search that resulted in the discovery of the victim. Thus, the note does not impeach Cooper's testimony. Furthermore, the ambiguity of the note is rebutted by evidence that the victim's body was recovered on September 3, 1983, with Cooper's help. An anonymous piece of paper does not undermine a conviction based on eyewitness testimony; a confession; a false alibi written in Bryan's handwriting *1009 and with his fingerprints on the paper; and clear evidence that the murder weapon was Bryan's. Thus, the trial court properly denied relief.

PETITION FOR WRIT OF HABEAS CORPUS
Bryan's Consolidated Petition for Extraordinary Relief, Writ of Habeas Corpus, and Leave to Reopen Direct Appeal, and his Request for Stay of Execution do not warrant relief. The petition for writ of habeas corpus, upon which the other claims for relief rely, is expressly based on Bryan's previous habeas petition that this Court denied. See Bryan v. Dugger, 641 So.2d 61 (Fla.1994). Bryan's current claim, however, contains a new twist: Bryan's trial and appellate counsel, Ted Alan Stokes, has sworn in an attached affidavit that he was an alcoholic when he represented Bryan at trial and on appeal, and he cites one instance where he may have provided ineffective assistance because of his possible state at that time. The affidavit states in part:
I cannot specifically recall how much I drank or how intoxicated I may have been when I met with Tony [Bryan on a particular night during trial], but I was under the influence of alcohol. As I have testified before and stated during Mr. Bryan's trial, I advised Tony that the State did not have any recorded taped [sic] conversations of him and Sharon Cooper. I decided to call Tony Bryan to the stand as a witness. I feel that decision was influenced by my lack of experience and possibly by my being under the influence of alcohol at the time of the jail conference.
Stokes' equivocal recollection that he may have been under the influence outside of trial does not warrant relief. See Kelly v. United States, 820 F.2d 1173, 1176 (11th Cir.1987)("There being no specific evidence that Kermish's drug use or dependency impaired his actual conduct at trial, Kelly has not met his initial burden of showing that Kermish's representation fell below an objective standard of reasonableness. See Strickland."). Furthermore, this Court affirmed the trial court's previous determination that counsel was effective at both the guilt and sentencing phases. See Bryan, 641 So.2d at 63, 64-65 (this Court affirmed that the allegations as to guiltphase ineffectiveness were insufficient to establish a violation of Strickland, and this Court affirmed the trial court's denial of relief as to alleged sentencing-phase ineffectiveness after it held an evidentiary hearing on the issue). Accordingly, regardless of counsel's condition, he rendered effective assistance. Thus, Bryan's petition for writ of habeas corpus and the related pleadings are denied.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, LEWIS and QUINCE, JJ., concur.
PARIENTE, J., concurs in part and dissents in part with an opinion, in which ANSTEAD, J., concurs.
PARIENTE, J., concurring in part and dissenting in part.
I concur in the majority's opinion in all respects other than the majority's summary denial of Bryan's petition for writ of habeas corpus, which is based on his trial counsel's affidavit dated October 24, 1999. In this affidavit, Bryan's trial counsel has made a new and previously-undisclosed revelation that during the time of the Bryan trial, which was his first capital trial, he was an "active alcoholic, drinking daily." He further specifically details how his lack of experience combined with his active alcoholism contributed to deficiencies in his performance at trial both during the guilt and penalty phase. The guiltphase deficiencies include counsel advising his client to testify because counsel was unaware of an audiotape of a telephone conversation between his client and the key prosecution witness.
Bryan never has had an evidentiary hearing on his original allegations of ineffective assistance of counsel in the guiltphase *1010 of the trial. In its 1991 summary denial of this claim, the trial court found the original and amended allegations to be "merely conclusory in nature and therefore facially insufficient." We affirmed the summary denial of the ineffective assistance of counsel claim. See Bryan v. Dugger, 641 So.2d 61, 63 (Fla.1994). In light of trial counsel's 1999 affidavit, it is difficult to understand how allowing a client to testify when a tape recording contradicting his testimony exists would not at least give rise to a colorable claim of ineffective assistance of counsel.
The allegations in the petition for writ of habeas corpus, which essentially allege ineffective assistance of trial counsel, are also contained in a newly filed motion for post-conviction relief in the trial court. The trial court dismissed this motion on October 25, 1999, based on lack of jurisdiction pending this Court's review of the trial court's previous order. Instead of this Court deciding the petition for habeas corpus on the merits, I would deny the petition for habeas corpus without prejudice for the claims of ineffective assistance of trial counsel to be considered by the trial court.
ANSTEAD, J., concurs.
NOTES
[1] Bryan attached affidavits stating that he was drinking heavily, deprived of sleep, and on drugs at the time of the crime, and an expert opinion that the above facts would have ensured to his favor at trial.
[2] In Strickland, the United States Supreme Court established a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
466 U.S. at 687, 104 S.Ct. 2052.
[3] To establish that the State withheld material exculpatory evidence in violation of Brady, a defendant must establish the following factors:

(1) that the Government possessed evidence favorable to the defendant ...; (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.
Melendez v. State, 718 So.2d 746, 748 (Fla.1998)(quoting Hegwood v. State, 575 So.2d 170, 172 (Fla.1991)).